OPINION
{¶ 1} This is an appeal by defendant-appellant, Spitzer Dodge, Inc. ("Spitzer"), from entries of the Franklin County Court of Common Pleas, awarding judgment in favor of plaintiff-appellee, Stephanie F. Hale, and against Spitzer and defendant-appellee, Nathaniel R. Sherman ("Sherman"), and overruling Spitzer's objections to a magistrate's decision denying Spitzer's motion for judgment notwithstanding the verdict. Appellee has filed a cross-appeal from the trial court's entry overruling objections to a magistrate's decision denying appellee's motion for prejudgment interest.
 {¶ 2} On September 14, 1999, Sherman, a car salesman for Spitzer, was driving a "demonstrator" car on South Hamilton Road, Columbus, when his vehicle struck the back of a vehicle driven by appellee. On March 13, 2003, appellee filed a complaint against Spitzer, Sherman, and Farmers Insurance of Columbus, Inc. ("Farmers Insurance"), alleging that Sherman was acting within the scope of his employment with Spitzer at the time of the accident, and that he failed to maintain an assured clear distance. Appellee alleged causes of action for negligence, respondeat superior (against Spitzer), and subrogation (against Farmers Insurance).[1] Appellee filed an amended complaint on March 20, 2003.
 {¶ 3} The parties agreed to a jury trial before a magistrate of the trial court, and the matter came for trial beginning April 15, 2004. Many of the relevant facts are not disputed, including the following facts presented at trial. On September 14, 1999, Sherman had a regularly scheduled day off from his job as a car salesman with Spitzer, and he was driving to the dry cleaners in a demonstrator car supplied by Spitzer when the vehicle collided with the rear of appellee's vehicle. The demonstrator vehicle, a 1997 Dodge Intrepid, had a dealer license plate on the back, a Spitzer logo on the front license plate, and a price "sticker" in the window. When Sherman parked the vehicle, he would hang a tag from the rearview mirror displaying the words "Red Hot Savings," and he would attach his business card to the tag. Sherman handed one of his cards to appellee following the accident.
 {¶ 4} According to Sherman, the dealership's use of demo cars "has several purposes and the main purpose is for recognition, awareness and for me to sell it any time I can." (Tr. Vol. I, at 137.) Sherman stated he is constantly looking for sales opportunities, whether at the dealership or elsewhere. Sherman recounted one instance in which he showed a demonstrator car to an individual away from the dealership, and this individual came to the dealership the next day and purchased that vehicle. He also stated there had been instances in which he "sold cars, made deals, started and came in on my day off, off the clock, and finished up the sale." (Tr. Vol. I, at 131.) During cross-examination, Sherman acknowledged stating in his deposition testimony that an additional purpose of being provided the demonstrator vehicle was an employee benefit; he also acknowledged there was no requirement by Spitzer that he drive a demonstrator car.
 {¶ 5} Rick Masa, an operations manager with Spitzer, testified that some Spitzer salespersons are permitted to drive demonstrator cars in order to facilitate sales; the vehicles are also provided as a benefit to the employee for use back and forth from home to work. Masa described the practice of "prospecting" as "letting people know what you do, looking for business, telling people what you do." (Tr. Vol. I, at 41.) He stated that prospecting was not limited to times when the salesman was at work, but that it often occurs away from the showroom floor.
 {¶ 6} At the close of appellee's case-in-chief, Spitzer moved for a directed verdict on the respondeat superior claim, which the magistrate denied. Spitzer renewed its motion for a directed verdict at the close of all the evidence, and the magistrate again denied the motion. Following deliberations, the jury returned its verdict on April 20, 2004, finding in favor of appellee, and against Sherman and Spitzer in the amount of $185,468, including a finding that Sherman was acting within the course and scope of his employment with Spitzer at the time of the accident.
 {¶ 7} Appellee and Sherman also entered into certain agreed stipulations on the date the verdict was rendered, including the stipulation that "Sherman shall not be held personally liable for that portion of any judgment awarded to Plaintiff Hale for which Defendant Sherman is not indemnified or covered under a bond or insurance policy issued by Defendant Sherman's liability insurance carrier, Farmers Insurance." In exchange for the above agreement, Sherman agreed to "cooperate as a Plaintiff in Stephanie Hale's attempts to bring a declaratory judgment action, bad faith claim, attorney malpractice claim, and/or any ethical violations which may be brought against Spitzer Dodge, its affiliates, and/or its insurers, as well as any legal counsel employed in this lawsuit by Spitzer Dodge."
 {¶ 8} By order filed May 5, 2004, the court awarded judgment in favor of appellee in the amount of $185,468. The court's order further provided that, upon agreement of appellee and Sherman, appellee "has stipulated and agreed that [appellee] will not levy upon, attach, execute, or satisfy any portion of the judgment from Defendant Sherman in excess of any bond, insurance policy or self-insurance which covered Defendant Sherman."
 {¶ 9} On May 10, 2004, Spitzer filed a motion for judgment notwithstanding the verdict, which the magistrate subsequently denied. Spitzer filed objections to the magistrate's decision denying its motion for judgment notwithstanding the verdict. By decision and entry filed October 27, 2004, the trial court overruled Spitzer's objections.
 {¶ 10} On May 18, 2004, appellee filed a motion for prejudgment interest. Following a hearing on the matter, the magistrate denied appellee's motion by decision filed October 18, 2004. Appellee also filed a supplemental motion to tax costs and expenses, and the magistrate issued a decision awarding costs to appellee in the amount of $820.
 {¶ 11} On November 1, 2004, appellee filed objections to the magistrate's decision denying her motion for prejudgment interest. By decision and entry filed December 10, 2004, the trial court overruled those objections. Also by entry filed December 10, 2004, the trial court adopted the magistrate's decision of November 9, 2004, and awarded costs to appellee.
 {¶ 12} On appeal, Spitzer sets forth the following two assignments of error for review:
Assignment of Error One
THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FAILING TO GRANT DEFENDANT SPITZER'S MOTION FOR DIRECTED VERDICT ON THE RESPONDEAT SUPERIOR ISSUE BOTH AT THE CLOSE OF PLAINTIFF'S CASE AND AT THE CLOSE OF ALL THE EVIDENCE[.]
Assignment of Error Two
THE TRIAL COURT IMPROPERLY DENIED DEFENDANT SPITZER'S MOTION FOR J.N.O.V. BASED UPON THE RESPONDEAT SUPERIOR ISSUE AND THE IMPROPER MARY CARTER DEAL ENTERED INTO BETWEEN PLAINTIFF AND DEFENDANT, NATE SHERMAN[.]
 {¶ 13} In her cross-appeal, appellee submits the following assignment of error for review:
The trial court erred by abusing its discretion in overruling appellee's objections to the magistrate's decision denying appellee's motion for prejudgment interest filed on November 1, 2004.
 {¶ 14} Under its first assignment of error, Spitzer contends the trial court erred in failing to grant its motion for directed verdict on the respondeat superior claim. We note that a portion of Spitzer's second assignment of error, asserting the trial court erred in failing to grant its motion for judgment notwithstanding the verdict ("JNOV"), also challenges the finding of liability under the doctrine of respondeat superior. Because these assignments of error raise interrelated issues, we will address them jointly.
 {¶ 15} The standard for granting a motion for JNOV under Civ.R. 50(B) is the same as that for granting a motion for directed verdict pursuant to Civ.R. 50(A). Texler v. D.O.Summers Cleaners Shirt Laundry Co. (1998), 81 Ohio St.3d 677,679. In Miller v. Lindsay-Green, Inc., Franklin App. No. 04AP-848, 2005-Ohio-6366, at ¶ 52, this court discussed that standard as follows:
* * * Pursuant to Civ.R. 50(A), "a motion for directed verdict is granted if, after construing the evidence most strongly in favor of the party against whom the motion is directed, `reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party.' " Goodyear Tire Rubber Co. v. Aetna Cas. Sur. Co.,95 Ohio St.3d 512, 769 N.E.2d 835, 2002-Ohio-2842, at ¶ 3, quoting Civ.R. 50(A)(4). Although this analysis requires a court to review and consider the evidence, motions for directed verdict and judgment notwithstanding the verdict present a question of law because a court must examine the sufficiency of the evidence, not weigh the evidence or try the credibility of the witnesses. Wagner v.Roche Laboratories (1996), 77 Ohio St.3d 116, 119,671 N.E.2d 252. See, also, Malone v. Courtyard by Marriott L.P. (1996),74 Ohio St.3d 440, 445, 659 N.E.2d 1242 ("[T]he court is confronted solely with a question of law: Was there sufficient material evidence presented at trial on this issue to create a factual question for the jury?"). As motions for directed verdict and judgment notwithstanding the verdict present a question of law, an appellate court applies the de novo standard of review.Goodyear Tire Rubber Co., supra, at ¶ 4.
 {¶ 16} Under the doctrine of respondeat superior, liability is imposed upon an employer "for the acts done by an employee in the course and scope of employment." Amato v. Heinika Ltd.,
Cuyahoga App. No. 84479, 2005-Ohio-189, at ¶ 4. The theory for allowing recovery under this doctrine "is that the employee's acts are imputed to the employer because the employee acting within the course and scope of employment, is assumed to do only those acts which benefit the employer." Id.
 {¶ 17} The question as to whether an employee is acting within the scope of employment at the time of his or her negligence is usually a question of fact to be decided by the jury. Benner v. Dooley (Aug. 2, 2000), Lorain App. No. 99CA007448, citing Osborne v. Lyles (1992), 63 Ohio St.3d 326,330. However, when there are undisputed facts, and reasonable minds can come to but one conclusion, the issue regarding scope of employment becomes a question of law. Benner, supra.
 {¶ 18} Ohio courts, in addressing the issue of respondeat superior, have held that "`[a]n employee "driving to work at a fixed place of employment" * * * is not acting in the course of her employment.' " Reese v. Fidelity Guaranty Ins.Underwriter, 158 Ohio App.3d 696, 2004-Ohio-5382, at ¶ 15, quoting Boch v. New York Life Ins. Co. (1964),175 Ohio St. 458. See, also, Sharkey v. Lakota Local School Dist. (Sept. 29, 1995), Wood App. No. WD-95-003 (in instances where an employee "merely drives to and from a fixed place of employment, for purposes of making his services available, the employee's driving confers no special benefit upon the employer"). This rule is recognized even if the employee is driving a company vehicle at the time of the accident. Kimble v. Pepsi-Cola General Bottlers
(1995), 103 Ohio App.3d 205, 206-207 ("the required operation of a company vehicle to and from a fixed site of employment is not, without more, sufficient to hold the employer liable under a theory of respondeat superior").
 {¶ 19} However, courts have recognized an exception to this general rule when there is "`evidence of "special benefit to the master other than the making of the servant's services available to the master at the place where they are needed."'" Reese,
supra, at ¶ 15, quoting Butler v. Baker (1993),90 Ohio App.3d 143. Further, "[i]f the conduct of an employee is actuated by a purpose to serve his master, the conduct may fall within the employee's scope of employment." Wrinkle v. Cotton, Lorain App. No. 03CA008401, 2004-Ohio-4335, at ¶ 16.
 {¶ 20} Restatement of the Law 2d, Agency (1957), Section 228, sets forth the following factors to be considered in determining whether an employee has acted within the scope of employment:
(1) Conduct of a servant is within the scope of employment if, but only if:
(a) it is of the kind he is employed to perform;
(b) it occurs substantially within the authorized time and space limits; [and]
(c) it is actuated, at least in part, by a purpose to serve the master[.]
* * *
(2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.
 {¶ 21} Several Ohio courts have cited with approval the Restatement of the Law 2d, Agency (1957), Section 228. See Akronv. Holland Oil Co., 102 Ohio St.3d 1228, 2004-Ohio-2834, at ¶12-16 (Pfeifer, J., dissenting); Wrinkle, supra (employee not acting within the scope of his employment at time of boating accident absent any evidence the employee organized the boating trip with the purpose of serving employer; the employee and passengers were not required to go on trip as part of their employment, the accident occurred outside the employer's authorized time and space limits, and boat was employee's personal asset); Amato, supra (action of restaurant employee in striking patron was "not an act of the kind he was employed to perform," was of no obvious benefit to employer, and a clear departure from his employment; therefore, employee was not acting within the scope of his employment).
 {¶ 22} Neither party has cited, nor are we aware of, any Ohio cases dealing with the issue of respondeat superior in the context of a car salesperson's use of a demonstrator vehicle provided by an employer. Several cases from other jurisdictions, however, have had occasion to address whether a salesperson is acting within the scope of his employment while driving a demonstrator vehicle. In State ex rel. City Motor Co. v.District Court (Mont. 1975), 530 P.2d 486, the employer-automobile dealer provided a demonstrator car for a salesman's use, and the salesman was driving the vehicle from a restaurant to his home on personal business when he was involved in an accident. In deposition testimony, the employer's sales manager testified that the purpose of providing demonstrator cars to a salesman was as a selling tool, and that such use was a sales asset to the dealership.
 {¶ 23} The Montana Supreme Court, in City Motor, supra, at 489, noting that there was no evidence in the record indicating that the salesman's visit on this particular occasion was anything but social, rejected the respondent's contention the salesman was acting in the course and scope of his employment in driving the demonstrator vehicle at the time of the incident, holding in part:
* * * [W]e detect a recurring theme in respondent's reasoning: the mere fact that a demonstrator on the street is of benefit to the dealer is enough to make the dealer answer for the faults of his salesman who drives it. This asks too much, for it would hold the dealer responsible at all times. We are not aware of any rule or policy of agency law requiring such a sweeping application of the doctrine of respondeat superior. * * *
 {¶ 24} In DiFerdinando v. Katzman (Del. 1988), 1988 WL 7621, the court cited with approval City Motor, supra, in holding that a car salesman, who was provided a demonstrator car by his employer for both benefit to the salesman and as advertisement to the employer, was not furthering his employer's business when he was involved in an accident leaving a softball game. In that case, the court noted that the salesman's attendance at the game was "purely personal," and the court also found significant the lack of evidence suggesting that the salesman, at the time of the accident, was either: (1) out demonstrating the car; (2) on his way to see a prospective client; or (3) had plans to discuss sale of a car with anyone.
 {¶ 25} Other courts have held that the fact a car dealership derives an incidental benefit from advertisement gained by a salesperson driving a demonstrator vehicle is insufficient to impose liability under the doctrine of respondeat superior where the employee was on a purely personal mission at the time of an accident. See, e.g., W.M.W. Inc., v. Collier (Ga.App. 1984),318 S.E.2d 747, 749 (product and source recognition employer received from allowing its employees to drive new demonstrator vehicles bearing "Honda Carland" tags was "simply an incidental advertising benefit," and, thus, employee involved in collision while on purely personal mission unrelated to his employment was not acting within the scope of his employment. See, also,Atlanta Blue Print Photo Reproduction Co. v. Kemp (Ga.App. 1974), 204 S.E.2d 515, 516 (where employee was on purely personal mission at time of accident, fact that employer's name was printed on exterior of vehicle, "thereby possibly conferring some incidental benefit to the employer by way of advertisement, does not make the use within the employee's scope of employment").
 {¶ 26} In the instant case, accepting the fact that Spitzer derived some benefit from the advertising on the vehicle, and further accepting the fact that Sherman was constantly prospecting for clients whether at work or away from work, we find that such evidence is insufficient, as a matter of law, to render a finding that Sherman was acting within the scope of his employment at the time of the accident. Here, the undisputed facts reflect that Sherman, at the time of the accident, was not driving the demonstrator to or from work, was not demonstrating the vehicle, nor was he on his way to show the vehicle to a prospective client; further, apart from Sherman's general testimony that he was always thinking about sales, there was no evidence that he had any specific plans to show the vehicle that day. Katzman, supra. Instead, he was on a purely personal errand, driving to the dry cleaners on his regularly scheduled day off from work, such conduct not involving the type he was employed to perform, nor occurring substantially within authorized time and space limits.
 {¶ 27} Furthermore, the mere fact that Sherman was constantly "prospecting," thus leaving open the possibility he might encounter a prospective client as a result of driving a demonstrator vehicle on his day off from work, does not, given the purely personal conduct at the time of the accident, render Spitzer liable under the doctrine of respondeat superior. Rather, as the court in City Motor, supra, at 489, concluded, "[t]his asks too much, for it would hold the dealer responsible at all times."
 {¶ 28} Other courts have similarly rejected the argument that an employee "on call 24 hours a day, 7 days a week," but engaged in purely personal conduct at the time of injury to another party, is acting within the scope of his or her employment. LeElder v. Rice (Cal.App. 1994), 26 Cal.Rptr.2d 749, 751 (employee on personal errand not acting within scope of employment even though his job required him to be on call at all hours every day; "Public policy would be ill-served by a rule establishing 24-hour employer liability for on-call employees, regardless of the nature of the employee's activities at the time of an accident"). See, also, Western Natl. Mut. Ins. Co. v. United States
(D.Minn. 1997), 964 F.Supp. 295, 298 (although employee was on-call, "on-call accessibility of an employee does not transform purely private activities at home into company business").
 {¶ 29} In the instant case, construing the facts most strongly in favor of appellee, reasonable minds could only conclude that Sherman's conduct was outside the scope of his employment at the time of the accident, and, thus, Spitzer was entitled to judgment as a matter of law on the respondeat superior claim. Accordingly, the magistrate should have granted Spitzer's motion for directed verdict and/or motion for JNOV, and the trial court erred in overruling Spitzer's objections to the magistrate's decision denying Spitzer's motion for JNOV. We therefore reverse the judgment of the trial court.
 {¶ 30} In light of our above determination, the remaining issue raised under Spitzer's second assignment of error, in which it contends that appellee and Sherman entered into an improper "Mary Carter" agreement, is rendered moot. Based upon the foregoing, Spitzer's first assignment of error is sustained, the second assignment of error is sustained to the extent provided above, and is otherwise rendered moot.
 {¶ 31} As previously noted, appellee has filed a cross-assignment of error, challenging the trial court's decision denying her motion for prejudgment interest against Spitzer. In her motion before the magistrate, appellee asserted that Spitzer and its counsel failed to fully cooperate in discovery proceedings. The magistrate, however, found that Spitzer had a good faith, objectively reasonable belief that it had no liability, and, therefore, denied the motion for prejudgment interest. Based upon this court's disposition of the first assignment of error, finding that the magistrate erred in failing to grant Spitzer's motion for directed verdict, and that the trial court erred in overruling Spitzer's objections to the magistrate's denial of its motion for JNOV, appellee's cross-assignment of error, challenging the trial court's denial of her motion for prejudgment interest against Spitzer, is hereby rendered moot.
 {¶ 32} Based upon the foregoing, Spitzer's first assignment of error is sustained, Spitzer's second assignment of error is sustained in part and rendered moot in part, and appellee's cross-assignment of error is rendered moot. Accordingly, the judgment of the Franklin County Court of Common Pleas is reversed, and this matter is remanded to that court for further proceedings in accordance with law, consistent with this opinion.
Judgment reversed and cause remanded.
Bryant and McGrath, JJ., concur.
[1] Prior to trial, defendant Farmers Insurance of Columbus, Inc., was dismissed from the case.