DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant appeals summary judgments issued by the Erie County Court of Common Pleas to an insurer and its agent on bad faith and fraud allegations arising out of an underinsured motorist claim. For the reasons that follow, we affirm in part and reverse in part.
 {¶ 2} Appellant is Shelley Coe, administrator of the estate of Wanda Moffit. On June 19, 1999, Wanda Moffit was seriously injured when the car in which she was a passenger crashed while attempting to pass a pickup truck at an intersection. Paralyzed and on a ventilator, Moffit survived for three months, then died. She was survived by three children, two of them minors when she died.
 {¶ 3} The driver of the car in which Moffit was riding carried minimal liability insurance which was soon exhausted. At the time of her injury, Moffit worked as a waitress at Diana's Deli in Sandusky, Ohio. Diana's Deli carried commercial insurance purchased through appellee Fitzgibbons Arnold Co., Inc. insurance agency and issued by appellee Grange Mutual Casualty Co.
 {¶ 4} On July 27, 1999, counsel for Moffit's family wrote appellee Fitzgibbons Arnold requesting a copy of the insurance policy for Diana's Deli "* * * to see if Ms. *Page 3 
Moffit has any insurance coverage thereunder." On August 3, 1999, a claims manager from appellee Fitzgibbons Arnold responded: "[t]here is no coverage for anyone that is not taking care of the insured's business interests." The agency claims manager requested copies of legal authority which might suggest otherwise.
 {¶ 5} On August 10, 1999, counsel responded to the agency claims manager with copies of the then recently released decisions of the Supreme Court of Ohio in Scott-Pontzer v. Liberty Mutual InsuranceCo. (1999), 85 Ohio St.3d 660, and Selander v. Erie Ins. Group (1999),85 Ohio St.3d 541.[1] Again, counsel requested "* * * a copy of the commercial policy so I can determine if there is any coverage."
 {¶ 6} Following some delay, appellant's counsel began direct communication with a claims representative for appellee Grange. On August 23, 1999, the insurer's claim representative sent appellant's counsel a detailed refutation of coverage under Selander andScott-Pontzer. Selander did not apply, the insurer maintained, because it was premised on earlier statutory definitions. Scott-Pontzer did not apply, according to appellee Grange's counsel, because the pertinent portions of that decision dealt with *Page 4 
coverage arising due to the failure to offer UM/UIM coverage on an umbrella policy: "The policy in the claim that you are making does not involve an umbrella policy * * *."
 {¶ 7} The timing and mechanism for discovery is not clear from the record, but at some point appellant found out that appellee Grange's denial of the existence of an umbrella policy was inaccurate. On July 10, 2001, appellant sued appellee Grange, alleging that it wrongfully breached its contractual obligation to provide underinsured motorist insurance for Wanda Moffit under the commercial and umbrella policies issued to Diana's Deli. Appellant also alleged that appellee Grange fraudulently concealed the existence of the umbrella policy, breached its duty to exercise good faith in evaluating appellant's claim and acted in bad faith in denying the claim.
 {¶ 8} On April 16, 2002, appellant and appellee Grange entered a stipulated dismissal of the contractual claims, with express reservation of the bad faith and fraud issues. In consideration for this dismissal, appellee Grange paid appellant the full $1 million limit of the umbrella policy and an additional $222,191.57, representing interest on the settlement amount from the date the claim accrued.
 {¶ 9} On March 21, 2003, with leave, appellant filed an amended complaint, reiterating its bad faith and fraud claims against appellee Grange and adding appellee Fitzgibbons Arnold as a defendant. Appellee Fitzgibbons Arnold, appellant alleged, also fraudulently concealed the existence of the umbrella policy and breached its duty of good faith to an insured. *Page 5 
 {¶ 10} On November 5, 2003, the Supreme Court of Ohio limited the effect of Scott-Pontzer, holding that, absent specific language to the contrary, UM/UIM coverage for an employee under a corporate policy occurs only if the employee's loss happens within the course and scope of his or her employment. Westfield Ins. Co. v. Galatis,100 Ohio St.3d 216, 2003-Ohio-5849, at paragraph two of the syllabus.
 {¶ 11} On December 19, 2003, appellee Fitzgibbons Arnold moved for judgment on the pleadings, arguing that retroactive application ofGalatis destroyed the underpinnings of appellant'sScott-Pontzer claim as appellant never alleged that Wanda Moffit was within the course and scope of her employment when she sustained the injuries that led to her death. Absent such an allegation, appellee Fitzgibbons Arnold insisted, appellant's complaint failed to state a claim upon which relief could be granted.
 {¶ 12} Appellant responded, noting that the UM/UIM coverage issue had been settled. The issues remaining, according to appellant, were the bad faith denial of the claim and of the conspiracy between appellees to prevent appellant from uncovering the existence of the umbrella policy. Moreover, appellant insisted, appellee Grange had already admitted the UM/UIM coverage in its answer and in response to appellant's first request for admissions. The trial court denied the motion.
 {¶ 13} Appellee Grange subsequently amended its answer and response to request for admissions, substituting a denial of coverage premised onGalatis. As this was proceeding, appellee Grange's motion for leave to file summary judgment was denied, the trial court concluding that, "At all relevant times [appellant] was an insured * * *. *Page 6 
Further, [appellant] has obtained vested contractual rights as an insured which are unaffected by Galatis." A companion motion by appellee Fitzgibbons Arnold was also denied.
 {¶ 14} Both appellees later moved for reconsideration, were granted leave, but summary judgment was denied. On submission of supplemental authority and yet another motion for reconsideration, however, the trial court reversed itself, concluding that the retroactive application ofGalatis undermined both appellant's bad faith and fraud claims. Moreover, the court found that Ohio does not recognize a bad faith claim against an insurance agent. On these conclusions, the trial court granted summary judgment to both appellees. Additionally, the court granted appellee Fitzgibbons Arnold's motion to dismiss the complaint against it as a sanction against appellee for discovery violations. A companion declaratory judgment action similarly resolved.
 {¶ 15} From these judgments, appellant now brings this appeal, setting forth the following nine assignments of error:
 {¶ 16} "[1.] The trial court erred in its July 11, 2006 orders by granting the Appellees' motions for summary judgment.
 {¶ 17} "[2.] The trial court erred in applying Galatis retrospectively to absolve the Appellees' bad faith and fraudulent conduct.
 {¶ 18} "[3.] The trial court erred in reconsidering its previous orders denying the Appellees' motions for summary judgment. *Page 7 
 {¶ 19} "[4.] The trial court erred in reconsidering its previous rulings that Appellant was owed a duty of good faith by Appellee Grange Mutual Ins. Co.
 {¶ 20} "[5.] The trial court erred in reconsidering its previous rulings that the Appellant has vested rights as an insured which are unaffected by Galatis.
 {¶ 21} "[6.] The trial court erred in granting summary judgment by resolving disputed issues of material fact surrounding Appellees' fraudulent conduct in favor of Appellees and against Appellant.
 {¶ 22} "[7.] The trial court erred in reconsidering its previous order denying Appellee Fitzgibbons Arnold Co., Inc.'s motion to dismiss as a discovery sanction.
 {¶ 23} "[8.] The trial court erred in its July 11, 2006 order by granting Appellee Fitzgibbons Arnold Co., Inc.'s motion to dismiss.
 {¶ 24} "[9.] The trial court erred in its July 11, 2006 order by dismissing with prejudice Appellant's claims against Appellee Fitzgibbons Arnold Co., Inc. as a discovery sanction."
 Summary Judgment {¶ 25} On review, appellate courts employ the same standard for summary judgment as trial courts. Lorain Natl. Bank v. SaratogaApts. (1989), 61 Ohio App.3d 127, 129. The motion may be granted only when it is demonstrated:
 {¶ 26} "* * * (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the *Page 8 
motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64, 67, Civ.R. 56(C).
 {¶ 27} When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought, Mitseff v.Wheeler (1988), 38 Ohio St.3d 112, syllabus, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleading, but must respond with specific facts showing that there is a genuine issue of material fact. Civ.R. 56(E); Riley v. Montgomery (1984),11 Ohio St.3d 75, 79. A "material" fact is one which would affect the outcome of the suit under the applicable substantive law. Russell v. Interim Personnel,Inc. (1999), 135 Ohio App.3d 301, 304; Needham v. Provident Bank (1996),110 Ohio App.3d 817, 826, citing Anderson v. Liberty Lobby, Inc. (1986),477 U.S. 242, 248.
 I. Westfield Ins. Co. v. Galatis {¶ 28} The majority of appellant's assignments of error concern the trial court's determination that the retroactive application ofGalatis negates essential elements of both appellant's bad faith and fraud claims. Both implicate an element of duty.
 {¶ 29} An action exists for insurer failure to exercise good faith when the insurer "* * * fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable *Page 9 
justification therefor." Zoppo v. Homestead Ins. Co. (1994),71 Ohio St.3d 552, syllabus. The elements of fraud are: "* * * (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." Burr v. Bd.of Comm. of Stark County (1986), 23 Ohio St.3d 69, paragraph two of the syllabus.
 {¶ 30} It is undisputed that appellee Grange sent appellant correspondence which expressly denied that there was an umbrella policy and delayed nearly two and one-half years in paying appellant's claim. Moreover, during discovery, appellant obtained correspondence between representatives of appellee Fitzgibbons Arnold and employees of appellee Grange which arguably counsel concealment of the existence of the umbrella policy.
 {¶ 31} Appellee Grange neither denies the delay in settling appellant's claim, nor the authenticity of the correspondence at issue. Rather, it claims, the correspondence had no influence on it and, in any event, appellant was not harmed by the delay because, in addition to settling for the limits of the umbrella policy, it paid interest from the time the claim accrued.
 {¶ 32} These conflicting assertions set up issues of fact which would ordinarily preclude summary judgment. Indeed, on several occasions, the trial court denied *Page 10 
appellees' motions for summary judgment. According to appellees, the issues are only material, however, if appellant's underlying claim is viable. The viability of appellant's claim is undermined by theGalatis case, appellees insist, because it is undisputed that Wanda Moffit was not acting within the scope or course of her employment when she was injured. Applying Galatis retroactively, appellees maintain that Wanda Moffit was not an insured under the umbrella policy. If Moffit was not an insured, appellees owed her no duty. Absent a duty, appellees insist, they are entitled to judgment as a matter of law, because duty to an insured is an element of both the bad faith and fraud claims.
 {¶ 33} "The general rule is that a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation, and the effect is not that the former was bad law, but that it never was the law. The one general exception to this rule is where contractual rights have arisen or vested rights have been acquired under the prior decision." Peerless Electric Co. v. Bowers (1955),164 Ohio St. 209, 210.
 {¶ 34} Relying on Daniels v. Citizens Ins. Co. of Ohio, 12th Dist. No. CA2005-03-008, 2005-Ohio-6166, the trial court concluded that a retroactive application of Galatis meant that appellant was never an insured and, thus, never owed a duty by either appellee as a matter of law. The court rejected appellant's argument that she had obtained vested contractual rights by virtue of the settlement and awarded summary judgment to appellees.
 {¶ 35} When Benjamin Daniels was seriously injured in a 1999 accident, he pursued a Scott-Pontzer claim against his mother's employer's insurer, prevailing in a *Page 11 
declaratory judgment action. This judgment was reversed, however, on authority of Galatis which was announced while Daniel's judgment was being appealed. See Daniels v. Citizens Ins. Co. of Ohio, 12th Dist. No. CA2003-06-023, 2004-Ohio-93. When the trial court, applyingGalatis to Daniels' remaining bad faith claim, granted summary judgment to the insurer, Daniels appealed. The appeals court ruled that without coverage in the first instance, a bad faith claim could not be maintained. The Daniels court ruled that a vested right to the claim had not arisen because such a right cannot vest until a judgment is secured.Daniels, 2005-Ohio-6166, at ¶ 15, citing Gooding v. National Fire Ins.Co. of Hartford, 5th Dist. No. 2003CA00199, 2004-Ohio-693.
 {¶ 36} Daniels is almost completely on point with the present matter, but is distinguishable in one important respect. The appeal of Daniels'Scott-Pontzer claim was pending when Galatis was decided. Consequently, any rights Daniels might have obtained were inchoate. In this matter, the underlying claim was settled and the joint notice of dismissal of the Scott-Pontzer claim with prejudice came more than a year beforeGalatis was announced. Nevertheless, appellees insist that the settlement and dismissal does not vest appellant's rights in the bad faith and fraud claims. Only a judgment vests rights under prior law, appellees maintain.
 {¶ 37} In our view, appellees' interpretation is too narrow. The joint notice of dismissal with prejudice, apparently authored by counsel for appellee Grange and signed by counsel for both appellant and appellee Grange is a final adjudication of the Scott-Pontzer claim. Appellee Grange concedes as much, expressly declining to attack the *Page 12 
settlement even though it has paid a $1.2 million on a claim retroactive application of Galatis would negate.
 {¶ 38} As a matter of policy, retroactive application of case law to settlements already memorialized, on claims already dismissed, would undermine the finality of such arrangements. This is the same rationale underlying the doctrine of res judicata with respect to judgments on the merits. See Grava v. Parkman (1993), 73 Ohio St.3d 379, 382-383. Thus, a dismissal with prejudice on a settlement agreement is the equivalent of a judgment. R+ K Contractors, Inc. v. Lone Star Construction Co. (Apr. 8, 1994), 11th Dist. No. 92-T-4809.
 {¶ 39} We also note that bad faith claims, to some extent, implicate a vindication of a public duty greater than is ordinary. 2 Widiss 
Thomas, Uninsured and Underinsured Motorists Insurance (3 Ed.2000) 236-237. At the time of the events which form the basis of this claim, it was unrefuted that Scott-Pontzer made Wanda Moffit an insured. If, believing this, an insurer and its agent sought to keep knowledge of the existence of an insurance policy from someone they knew was insured under that policy, this constitutes acts in breach of a duty of fair dealing with the public which ought not to be condoned merely because they were later absolved of their duty to the insured.
 {¶ 40} Consequently, since a dismissal with prejudice on settlement is the equivalent of a judgment, appellant obtained vested rights which rightfully should not be disturbed by subsequent judicial interpretations. *Page 13 
 {¶ 41} Accordingly, appellant's Assignments of Error Nos. 1, 2 and 6 are found well-taken. Assignments of Error Nos. 3, 4, and 5 are moot.
 II. Discovery Violations {¶ 42} In her remaining assignments of error, appellant asserts that the trial court's decision to dismiss as a discovery sanction her claim against appellee Fitzgibbons Arnold was erroneous.
 {¶ 43} Civ.R. 41(B)(1) provides that "[w]here the plaintiff fails to * * * comply with these rules or any court order, the court upon motion of a defendant or on its own motion may, after notice to plaintiffs counsel, dismiss an action or claim." The decision to dismiss a case pursuant to Civ.R. 41(B)(1) rests in the sound discretion of the court and will not be reversed absent an abuse of that discretion. QuonsetHut, Inc. v. Ford Motor Co. (1997), 80 Ohio St.3d 46, 47. An abuse of discretion is more than a mistake of fact or an error of judgment, the term connotes that the court's attitude is arbitrary, unreasonable or unconscionable. Blakemore v. Blakemore (1981), 5 Ohio St.3d 217, 219. Civ.R. 37 (B)(2)(c) expressly allows a court to dismiss an action for a discovery violation.
 {¶ 44} Appellant argues that it did not have the necessary antecedent notice, yet on July 26, 2004, the court issued an order compelling timely discovery on threat of dismissal. Although four days later, the court issued an order denying the motion to compel it had already granted, appellant subsequently responded to the first order and cannot now be heard to complain that she had no notice. *Page 14 
 {¶ 45} The trial court, in its order of dismissal, enumerated 11 discovery violations subsequent to its order to compel. Included in these were failure to disclose the identity of appellant's insurance expert, the identity of her trial witnesses, damages and documents. In our view, the court acted with notice and within its discretion in dismissing appellant's complaint against appellee Fitzgibbons Arnold as a discovery sanction. Accordingly, appellant's eighth and ninth assignments of error are not well-taken.
 {¶ 46} Appellant's seventh assignment of error, concerning the propriety of the trial court's decision to reconsider its prior order to dismiss discovery sanctions is not separately argued and may, therefore, be disregarded. App.R. 12 (A) (2); C. Miller Chevrolet v. WilloughbyHills (1974), 38 Ohio St.2d 298, 300.
 {¶ 47} On consideration whereof, the judgment of the Erie County Court of Common Pleas is affirmed, in part, and reversed, in part. This matter is remanded to said court for further proceedings consistent with this decision. It is ordered that the parties pay equal amounts in the cost of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Erie County.
 JUDGMENT AFFIRMED, IN PART, AND REVERSED, IN PART. *Page 15 
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Mark L. Pietrykowski, P.J., Arlene Singer, J., Thomas J. Osowik, J. CONCUR.
[1] Released June 23, 1999, and June 2, 1999, respectively, these cases held that uninsured/underinsured motorist coverage ("UM/UIM") in certain corporate insurance policies applied to employees and, where there was no contractual restriction predicating coverage on the employee being within the scope of his or her employment, the coverage carried over into non-employment settings. Scott-Pontzer at 665. Moreover, when coverage arises as a matter of law, as when UM/UIM coverage is not offered at the time of purchasing a policy, such coverage includes non-employment settings. Selander at 546;Scott-Pontzer at 666. *Page 1