OPINION
{¶ 1} Plaintiff-appellant, Bryan Byrd, appeals the decision of the Clermont County Court of Common Pleas granting summary judgment in favor of defendant-appellee, Continental Casualty Company ("Continental"). We affirm the trial court's decision.
 {¶ 2} In August 2000, Byrd was injured in an automobile accident when a pickup truck went left of center and hit the van Byrd was driving. Byrd sustained severe injuries, spent multiple weeks in the hospital, and had various surgeries as part of his postrelease *Page 2 
 {¶ 3} At the time of the accident, Byrd worked for DeBra Company (presently known as DeBra-Kuempel) ("DeBra") as an apprentice mechanical service tech through the plumbers and pipe fitters local union 392. DeBra leased the van Byrd was driving at the time of the accident. The commercial insurance policy in question was in place between DeBra and its mother company, Emcor, and was underwritten by Continental.
 {¶ 4} In addition to filing a complaint against the driver of the pickup truck, Glenn Smith, Byrd also named Continental as a defendant, seeking uninsured/underinsured-motorist ("UM/UIM") coverage under Emcor's policy issued by Continental. When Smith's insurance liability policy exhausted, Smith and his mother were dismissed from the suit and Byrd continued to pursue his UM/UIM claim against Continental.
 {¶ 5} Three years after the suit initiated, the Ohio Supreme Court decided Westfield Ins. Co. v. Galatis, 100 Ohio St.3d 216,2003-Ohio-5849, which held that an employee must be acting within the course or scope of his employment in order to recover under his employer's UM/UIM coverage. Soon after, Continental moved for summary judgment, claiming that Byrd was not in the course or scope of his employment when the accident occurred and was not, therefore, entitled to UM/UIM coverage under Emcor's policy. The trial court granted summary judgment to Continental and this court affirmed that decision.
 {¶ 6} On appeal, Byrd raised an assignment of error asserting that the trial court failed to consider the affidavit he filed along with his memorandum in opposition to Continental's motion for summary judgment. This court overruled the assignment of error and held that neither party could prevail on summary judgment by creating an issue of material fact through the use of contradictory or conflicting summary judgment materials. Because Ohio appellate districts lacked uniformity in their analysis of the matter, the Ohio Supreme Court certified and accepted the issue for review and ultimately overturned the *Page 3 
decision of this court and remanded the case to the trial court for further proceedings. Byrd v. Smith, 110 Ohio St.3d 24, 2006-Ohio-3455.
 {¶ 7} In 2006, as part of the further proceedings on remand, the trial court determined that Byrd's affidavit was supplemental in nature and that it raised genuine issues of material fact so that summary judgment was not appropriate. After re-deposing Byrd in 2007, and submitting to the court all materials to be considered, Continental re-filed its motion for summary judgment claiming that the new deposition and supplemental affidavit demonstrated that Byrd was not in the scope or course of his employment when the accident occurred.
 {¶ 8} Continental's second motion was heard by a different judge in the same court who reviewed all submitted depositions and ultimately granted summary judgment in favor of Continental, finding that as a matter of law, Byrd was not in the scope or course of his employment at the time of the accident. Byrd timely appeals, raising three assignments of error.
 {¶ 9} Assignment of Error No. 1:
 {¶ 10} "THE LAW OF THE CASE DOCTRINE PREVENTS THE TRIAL COURT FROM GRANTING CONTINENTAL'S MOTION FOR SUMMARY JUDGMENT IN THIS CASE."
 {¶ 11} Byrd asserts that the lower courts were bound to the Ohio Supreme Court's ruling on his original appeal which established that whether Byrd was acting in the scope of his employment at the time of the accident was a genuine issue of material fact. Byrd misconstrues the Supreme Court's holding and erroneously bases his first assignment of error on the law of the case doctrine.
 {¶ 12} The "law of the case" doctrine provides that decisions made by a reviewing court regarding legal questions remain the law of that case for all subsequent proceedings at *Page 4 
both the trial and appellate levels. Nolan v. Nolan (1984),11 Ohio St.3d 1. Though the doctrine ensures consistency of results and preserves the structure of superior and inferior courts as designated by the Ohio Constitution, the doctrine "is considered to be a rule of practice rather than a binding rule of substantive law and will not be applied so as to achieve unjust results." Id. at 413.
 {¶ 13} In essence, the doctrine compels trial courts to adhere to a reviewing court's mandates. Id. "Absent extraordinary circumstances, such as an intervening decision by the Ohio Supreme Court, an inferior court has no discretion to disregard the mandate of a superior court in a prior appeal in the same case." State v. Prom, Butler App. No. CA2004-07-174, 2005-Ohio-2272, ¶ 20. Furthermore, a trial court lacks authority to extend or vary the mandate given. Nolan.
 {¶ 14} Byrd asserts that the trial court did not conform itself to the Ohio Supreme Court's mandate. Based on the record however, Byrd's argument is unpersuasive.
 {¶ 15} In order to determine the exact boundaries of the mandate, it is necessary to review the Ohio Supreme Court's decision in Byrd v.Smith. On appeal, the supreme court stated that the matter was before them on a certified conflict and explicitly declared that the issue to be resolved was "whether it is proper for courts to disregard an affidavit inconsistent with or contradictory to prior deposition testimony when ruling on a motion for summary judgment." Byrd,2006-Ohio-3455 at ¶ 8. However, the supreme court never declared that it would review or discuss the merits of the scope of employment issue.
 {¶ 16} Instead, in order to answer the certified question before it, the supreme court analyzed the effect Byrd's additional affidavit had on the summary judgment process. Specifically, it stated that "in the present case, whether Byrd's injury occurred within the scope of his employment is a factual issue material to his potential UM/UIM coverage." Id. at ¶ 13. The supreme court then went through a detailed discussion of what information was *Page 5 
included in Byrd's affidavit and why it was important for the trial court to have considered these facts when reviewing Continental's motion for summary judgment. While the supreme court declared that the trial court should have considered the affidavit, it did not speak to whether or not Byrd's affidavit was actually sufficient to create a genuine issue of material fact.
 {¶ 17} Instead, the supreme court focused on the process for determining the applicability a conflicting or inconsistent affidavit will have on summary judgment and set forth a two-step process. First, the court must determine whether the affidavit contradicts or merely supplements the deposition. Id. at ¶ 26. If supplemental in nature, the court will consider the information contained therein as part of the evidence presented to it under normal summary judgment proceedings. Id. Second, if faced with a contradictory affidavit, the trial court must look to any explanation for the inconsistency but need not overrule a motion for summary judgment simply because an inconsistency exists between the affidavit and the deposition. Id. at ¶ 27.
 {¶ 18} Throughout the opinion, the supreme court noted that the trial court never referred to Byrd's affidavit in its ruling. Because of this failure, it ordered that the trial court "must still evaluate Byrd'sexplanation that his deposition did not fully explore the issue of scopeof employment, as it was not relevant before. Based upon our answer to the certified question, we reverse * * * and remand for further proceedings in accordance with this opinion." (Emphasis added.) Id. at ¶ 31-32.
 {¶ 19} The entire reason for and focus of the supreme court's opinion in Byrd v. Smith was answering the certified question dealing with the applicability of supplemental or inconsistent affidavits and their impact on summary judgment. While the supreme court recognized that whether Byrd was in the scope of his employment at the time of his accident was a material fact, it never addressed, analyzed, or decided whether that material fact *Page 6 
presented a genuine issue for consideration. Instead, the mandate set forth in Byrd v. Smith was an order for the case to be remanded in order for the trial court to determine whether the affidavit was supplemental or inconsistent and then, if appropriate, to consider its impact on summary judgment proceedings. Absent in the mandate, however, was an announcement that summary judgment was improper in the case or that once Byrd's affidavit was considered, summary judgment was not possible.
 {¶ 20} Though Byrd would have this court read the supreme court's decision as a pronouncement of the existence of a genuine issue of material fact, therefore making summary judgment inappropriate, the opinion is void of such a directive. After the first judge, considering the issue on remand, declared Byrd's affidavit to be supplemental, and considered it while ruling on the motion for summary judgment, the supreme court's mandate was completely executed. Because the law of the case had never established the existence of a genuine issue of material fact, the second judge did not violate the already-executed mandate when he reviewed the additional deposition and granted Continental's motion for summary judgment.
 {¶ 21} Byrd also asserts that the law of the case precluded the second judge from granting Continental's motion for summary judgment once the first judge overruled it. This argument is unpersuasive as well.
 {¶ 22} "Regarding a summary judgment motion, an order overruling such a motion is subject to revision by the trial court at any time prior to the entry of final judgment * * *." Poluse v. Youngstown (1999),135 Ohio App.3d 720.
 {¶ 23} To support his assertion that the second judge was bound by the first judge's denial of summary judgment, Byrd cites Poluse in which the Seventh Appellate District reviewed the law of the case doctrine and recognized that it has been extended to encompass a trial court's adherence to its own prior rulings or to the rulings of another judge *Page 7 
or court in the same case. Id. Citing Clymer v. Clymer (Sept. 26, 1995), Franklin App. No. 95APF02-239. However, Poluse goes on to say that the doctrine should not be taken to imply that a trial court is unable to reconsider its prior ruling. Id.
 {¶ 24} Here, the second judge did not violate the law of the case when he granted Continental's motion for summary judgment. Approximately five months after the first judge denied Continental's first motion, Byrd was deposed a third time during which Continental asked specific questions regarding the scope of employment issue. After this deposition, Continental filed its second motion for summary judgment and the second judge reviewed the submitted affidavits and all depositions.
 {¶ 25} In the decision granting summary judgment, the second judge stated, "the trial court found that the affidavit created a genuine issue of material fact as to the course and scope of employment because the issue was not discussed during the first two depositions. Since that time, a third deposition has been taken. The court before it today has the first two depositions, the affidavit of Bryan Byrd, and a new deposition on the issue of course of employment. New facts have been presented to this court that were not available when the original trial court denied summary judgment. The `law of the case' doctrine does not preclude this court from ruling on the defendant's motion for summary judgment." We find no error in this conclusion.
 {¶ 26} Because on remand, the first judge adhered to the supreme court's mandate and because the second judge was not precluded from reconsidering his court's prior decision, the law of the case doctrine is inapplicable. Therefore, Byrd's first assignment of error is overruled.
 {¶ 27} Assignment of Error No. 2:
 {¶ 28} "THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT TO
CONTINENTAL SINCE QUESTIONS OF FACT ARE PRESENT FOR DETERMINATION BY *Page 8 
A TRIER OF THE FACTS."
 {¶ 29} Byrd argues that the trial court erred by granting summary judgment because genuine issues of material fact remain as to whether he was in the scope and course of employment at the time of the accident. We find this argument without merit.
 {¶ 30} This court's review of a trial court's ruling on a summary judgment motion is de novo. Broadnax v. Greene Credit Services (1997),118 Ohio App.3d 881, 887. Civ. R. 56 sets forth the summary judgment standard and requires that there be no genuine issues of material fact to be litigated, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion being adverse to the nonmoving party. Slowey v. Midland Acres, Inc., Fayette App. No. CA2007-08-030, 2008-Ohio-3077, ¶ 8. The moving party has the burden of demonstrating that there is no genuine issue of material fact.Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64.
 {¶ 31} In order to prevail, the moving party must point to evidentiary material that demonstrates a lack of genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.Dresher v. Burt, 75 Ohio St.3d 280, 293, 1996-Ohio-107. The nonmoving party must then present evidence that some issue of material fact remains for the trier of fact to resolve. Id. All evidence submitted with a motion for summary judgment must be construed most strongly in favor of the nonmoving party. Morris v. First National Bank TrustCo. (1970), 21 Ohio St.2d 25.
 {¶ 32} At issue in this case is whether Byrd is entitled to claim UM/UIM benefits under Emcor's insurance policy. Admittedly, Byrd was employed by DeBra at the time of his accident. However, in order to recover UM/UIM benefits under an employer's insurance policy, the employee must be in the course and scope of his employment at the time the accident occurred. Galatis, 100 Ohio St.3d 216.
 {¶ 33} According to basic agency principles, `scope of employment' as a legal term *Page 9 
lacks a comprehensive definition because the cases are fact specific and presents a sui generis issue for review. Posin v. A.B.C. Motor CourtHotel, Inc. (1976), 45 Ohio St.2d 271. In an attempt to characterize scope of employment, the Ohio Supreme Court stated that an employee's act is considered in the course of his employment when it "can fairly and reasonably be deemed to be an ordinary and natural incident or attribute of the service to be rendered or a natural, direct, and logical result of it." Id. at 339.
 {¶ 34} More specifically, Restatement of the Law 2d, Agency (1957), Section 228 sets forth three factors to consider when determining if an employee's conduct falls within the scope of his employment. Only when conduct is the kind the employee is employed to perform, occurs substantially within the authorized time and space limits, and is actuated, at least partly, to serve the employer, will the employee's acts be considered within the scope of his employment. Id. However, an employee who departs from his employment to engage in his own affairs is no longer in the scope of his employment when that departure is "such a divergence from his regular duties that its very character severs the relationship of master and servant." Posin at 340.
 {¶ 35} Because determining the issue is so fact specific and contingent in nature, whether an employee's act falls within the scope of his employment is a question of fact and is usually left within the province of a jury. Benner v. Dooley (Aug. 2, 2000), Lorain App. No. 99CA007448. However, summary judgment is appropriate in cases where reasonable minds can come to but one conclusion and the issue can be determined as a matter of law. Id. The issue becomes a matter of law when the facts are undisputed and no conflicting inferences are possible. Id. See Norman v. Keeler, Portage App. No. 2003-P-0052,2005-Ohio-1899 (affirming summary judgment because employee was not acting in scope of employment when she was hit while walking in the parking lot of a grocery store she went to while on her lunch break); and McPherson v. Frankland, Stark App. No. 2004CA00162, *Page 10 2005-Ohio-1112 (affirming summary judgment because employee was not in the scope of his employment with the police department when he caused a fatal car accident after he left a training exercise, stopped at a video store, and was on his way to a friend's house).
 {¶ 36} After thoroughly reviewing the record, we find the trial court did not err in granting summary judgment. The issue became a matter of law because reasonable minds could not have concluded that Byrd was acting in the scope of his employment with DeBra when Smith hit his van. Even when construing the facts in Byrd's favor as the nonmoving party, the facts are undisputed and no conflicting inferences are possible. Taken from his own depositions and affidavit, the facts establish that Byrd was not acting in the scope of his employment when Smith hit him.
 {¶ 37} First, at the time of the accident, Byrd was not engaged in conduct that DeBra hired him to perform. Byrd was a service technician and had for the 10-12 months prior to the accident, been working at a fixed job site installing and servicing heating and air conditioning systems. At the time of the accident, however, Byrd was running a personal errand. Byrd's sole purpose for traveling that evening was to return home after dropping off a car part at his father-in-law's house. Once he left the job site, Byrd drove to East Fork Precision Welding to pick up the repaired part. He then drove to his father-in-law's house and visited a while before heading home.
 {¶ 38} Second, the errand was not within the authorized time and space limits of Byrd's regular employment. Byrd had established and routine working hours from 7:30 a.m. to 4:00 p.m. As an apprentice, these hours were regulated by his local union so that he could attend evening classes to earn his journeyman's license. After "clocking out" at 4:00, Byrd drove away from the job site and began the process of picking up the car part to drop off at his father-in-law's house. The accident occurred at approximately 7:35 p.m., a full three and a half hours after Byrd ended his work day. Byrd's personal errand took over three *Page 11 
hours to complete and therefore was such a divergence from his regular duties that the errand's duration and character removed his act from the scope of his employment.
 {¶ 39} Lastly, Byrd's conduct was not actuated by a purpose to serve DeBra. Though Byrd asserts that he was serving DeBra by wearing a pager and advertising their services, these arguments are unpersuasive. Byrd stated in his affidavit that he carried a pager issued by DeBra at all times. However, his deposition testimony revealed that DeBra would page Byrd only to inform him of a change in job sites so that Byrd would know where to report for work. Unlike a typical 24-hour "on-call" situation where an employee reports to work immediately upon receiving a page, Byrd would respond only to learn the location of a future assignment.
 {¶ 40} Byrd also claims that he considered himself serving DeBra anytime he drove the van because a sign on it advertised DeBra as a 24-hour service company. At least one other Ohio appellate district has rejected this argument. In Hale v. Spitzer Dodge, Inc., Franklin App. No. 04AP-1379, 2006-Ohio-3309, the Tenth Appellate District reversed a jury verdict because as a matter of law, the employee was not in the scope of his employment when he caused an accident. While Byrd tries to distinguish the case by pointing out that the plaintiff argued respondeat superior liability, the issue in Hale was whether the employee was acting within the scope of his employment at the time of the accident so that the analysis is pertinent to the case at bar.
 {¶ 41} In Hale, the employee, a car salesman, drove a demonstrator car in order to advertise Spitzer's merchandize and also used the car for personal use. Id. The demonstrator car had dealer plates, the Spitzer emblem on the front license plate, and a price sticker in the window. When the employee parked the car, he would attach his business card and hang a tag on the rear view mirror that advertised "Red Hot Savings." Id. Though the demonstration car undoubtedly raised awareness of Spitzer's name and product, *Page 12 
the employee was directly benefitted by using the car for personal errands. At the time of the accident, the employee was picking up dry cleaning and was therefore on a purely personal errand. Id. While the advertising provided Spitzer with some benefit, the court found the evidence insufficient as a matter of law to place the employee's act within the scope of his employment. Id.
 {¶ 42} The court also analyzed the fact that the employee was constantly prospecting for customers by driving the demonstration car even when he was away from his job. Id. Similar to an on-call employee, the plaintiff in Hale argued that the employee was acting in the scope of his employment because he could be called on at any moment to switch from using the car for personal use to trying to sell it to a perspective customer. Id. The court rejected this argument as well, and determined that when an on-call employee is engaged in purely personal conduct at the time of the incident, he will not be considered within the scope of his employment. Id.
 {¶ 43} Like the employee in Hale, Byrd used the van for both business and personal use. DeBra allowed its employees to use the company vans to commute back and forth to work and also to engage in personal use such as running errands or even towing boats. DeBra also gave employees gas cards and did not place restrictions on use. While it is true that DeBra tangentially benefited from the advertising on the van, the true benefit of unfettered use of the company van rested with Byrd. Instead of responding to a page, transporting company equipment, or engaging in any service to his employer at the time of the accident, Byrd's personal errand was not actuated by a purpose to serve DeBra.
 {¶ 44} Because Byrd's conduct was different in nature than what he was hired to do, occurred far beyond the authorized time and space limits of his normal work, and did not serve his employer, reasonable minds could only conclude that Byrd was not acting within the scope of his employment at the time of the accident so that summary judgment was *Page 13 
appropriate. Therefore, Byrd's second assignment of error is overruled.
 {¶ 45} Assignment of Error No. 3:
 {¶ 46} "THE TRIAL COURT ERRED IN DETERMINING THAT THE BYRDS HAD NOT ACQUIRED A CONTRACTUAL RIGHT TO SEEK UM/UIM COMPENSATION FROM CONTINENTAL ONCE THE TORTFEASOR'S LIMITS WERE EXHAUSTED."
 {¶ 47} Byrd argues that Galatis should not be applied retrospectively because his recovery right under Emcor's UM/UIM policy vested at the time Smith's insurance was exhausted and he was released from the suit. This argument lacks merit.
 {¶ 48} Before Galatis, Scott-Pontzer v. Liberty Mut. Fire Ins.Co., 85 Ohio St.3d 660, 1999-Ohio-292, set forth the law on UM/UIM claims between an employee and the employer's insurance company.Scott-Pontzer did not require the plaintiff to show that he was acting in the scope of employment at the time of the accident in order to claim UM/UIM coverage. Essentially overruling this decision, Galatis was later announced, setting forth the current rule of law.
 {¶ 49} "The general rule is that a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation, and the effect is not that the former was bad law, but that it never was the law. The one general exception to this rule is where contractual rights have arisen or vested rights have been acquired under the prior decision." Peerless Electric Co. v. Bowers (1955),164 Ohio St. 209. A right cannot vest until a judgment is secured. Daniels v.Citizens Ins. Co. of Ohio, Madison App. No. CA2005-03-008,2005-Ohio-6166.
 {¶ 50} Byrd cites Coe v. Grange Mut. Cas. Co., Erie App. Nos. E-06-057, E-06-058, 2007-Ohio-2823, to support his contention thatGalatis should not apply to his case. In Coe, the plaintiff sought UM/UIM coverage on behalf of Wanda Moffitt who was fatally wounded in a car accident. The plaintiff filed suit against Grange and the two parties eventually settled *Page 14 
their dispute by entering a stipulated dismissal of the claims and agreed that Grange would pay the plaintiff in excess of $1.2 million. Id. A year after the parties made this agreement, plaintiff reiterated its bad faith and fraud claims against Grange. During the pendency of that proceeding, the court decided Galatis. However, the court inCoe upheld the settlement and dismissal even though Moffitt was not acting in the scope of her employment when the accident occurred. The court held that because the parties had settled and dismissed the UM/UIM claim with prejudice a full year before Galatis was announced, plaintiff had a vested right which would be unaffected by the change in law. Id.
 {¶ 51} Coe, however, is dissimilar to the current facts because Byrd never settled his claim against Continental before Galatis was released. Though he claims that his rights vested at the moment Smith's policy exhausted resulting in Smith's release from the case, Bryd has never secured a judgment in the case against Continental nor were any of the claims dismissed. Smith's dismissal had no effect on what rights Byrd had under Emcor's policy underwritten by Continental or on whether Byrd was acting in the scope of his employment at the time of the accident.
 {¶ 52} This court has recently analyzed the retroactive application ofGalatis in a case very similar to the one at bar. In Daniels v. CitizensIns. Co. of Ohio, Madison App. No. CA2005-03-008, 2005-Ohio-6166, we recognized that a reviewing court cannot ignore Galatis and the supreme court's direction to apply it retrospectively. This court then determined that the plaintiff was not covered under the employer's UM/UIM policy and had no vested rights because she had not obtained judgment prior to the Galatis decision. We then affirmed the lower court's grant of summary judgment because, when considered in light ofGalatis, no genuine issues of material fact remained.
 {¶ 53} Much like Daniels, Byrd has no vested rights underScott-Potzner, and his case was rightly determined by the current rule of law set forth in Galatis. Because the trial court *Page 15 
properly considered Continental's motion for summary judgment in light of Galatis, no genuine issues of material fact remain and summary judgment was rendered properly. Byrd's third assignment is overruled.
 {¶ 54} Judgment affirmed.
 WALSH, P.J., and YOUNG, J., concur. *Page 1