[Cite as *Jensen v. AdChoice, Inc.*, 2014-Ohio-5590.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Theresa J. Jensen

    Appellant/Cross-Appellee

v.

AdChoice, Inc., et al.

    Appellees/Cross-Appellants

Court of Appeals No. L-14-1014

Trial Court No. CI0200905399

**DECISION AND JUDGMENT**

Decided:  December 19, 2014

* * * * *

Thomas S. Douglas, for appellant/cross-appellee.

Daniel L. Maloney and William T. Maloney, for appellees/
cross-appellants.

* * * * *

**YARBROUGH, P.J.**

## I.  Introduction

{¶ 1} This is an appeal and cross-appeal from the judgment of the Lucas County Court of Common Pleas, which granted appellees/cross-appellants', AdChoice, Inc. (of Oregon), Proforma, Debra Belegrin, and Kathleen Keel, cross-motion for summary judgment on their counterclaim for breach of a sales representative agreement ("SRA"). For the following reasons, we affirm.

## A. Facts and Procedural Background

{¶ 2} Appellant/cross-appellee, Theresa Jensen, formed AdChoice, Inc., to engage in the business of print brokerage, design, and advertising. In December 2000, after several years of operations, appellant agreed to sell the business to appellees.[1] The terms of the sale were that appellees agreed to pay $500,000 for the business, payable in the form of $100,000 in cash, the issuance of a $250,000 promissory note, and the execution of an Exclusive Consulting Agreement ("ECA") that would pay appellant $150,000. Subsequently, several addendums to the promissory note were executed, the seventh and most recent of which was signed on June 23, 2008, wherein appellees agreed to pay the then balance on the note of $53,638.40. In addition to the contract of sale, the promissory note, and the ECA, the parties entered into a Sales Representative Agreement ("SRA"). It was contemplated that after the sale, appellant would work for the company as its primary sales agent in an effort to build upon the existing relationships she had with the company's customers.

{¶ 3} The origin of the present lawsuit began in the summer of 2007, when appellant formed Terem Marketing, LLC ("Terem") while she was still employed as a sales representative for appellees. Appellant states in her affidavit that she formed Terem because, at the time, appellees were having difficulty paying their suppliers, which

---

[1] Belegrin and Keel formed AdChoice, Inc. (of Oregon), to purchase the original AdChoice, Inc. AdChoice, Inc. (of Oregon) later entered into a business relationship with Proforma. For ease of discussion, where the distinction is immaterial, we will refer to Belegrin, Keel, AdChoice, Inc. (of Oregon), and Proforma, individually or collectively, as "appellees."

2.

potentially could result in delays in the production of materials for appellees' customers. Appellant reasoned that if a supplier refused to produce an order for appellees, she could submit the order through Terem so that the customers' needs would be satisfied.

{¶ 4} The first order submitted by Terem occurred on March 12, 2008. Subsequently, 91 orders were placed by Terem between then and November 2008. During that same period, appellant placed an additional 239 orders under appellees' name. Appellant alleges in her affidavit that appellees knew and approved of the first order, and that they were aware of all subsequent orders by Terem for a particular customer. Further, appellant states that, in December 2008, she submitted a full accounting to appellees regarding all of the orders placed through Terem, and included a proposed split of the net profits from those sales. Appellees, on the other hand, state in Belegrin's affidavit that they only authorized appellant to submit the first order *in her name*, and that they had no knowledge of Terem until July 2008. Further, Belegrin stated that appellees did not receive any of the details of the orders placed by Terem until the summer of 2010, during the present litigation.

{¶ 5} In March 2009, after allegedly being told by appellant that the amount of the Terem orders approached $116,000, appellees ceased making payments on the promissory note.

{¶ 6} On July 8, 2009, appellant filed a complaint against appellees, seeking repayment on the remaining balance of the note. Appellees answered, and filed a counterclaim alleging, inter alia, breach of the contract of sale, the ECA, and the SRA.

3.

Following discovery, the parties filed motions and cross-motions for summary judgment on their respective claims and counterclaims. On January 11, 2012, the trial court entered its decision granting summary judgment for appellant on her claim for nonpayment of the promissory note, and granting summary judgment for appellees on their counterclaim for breach of the non-compete provision of the SRA.

{¶ 7} In its decision, after finding that summary judgment in favor of appellees was appropriate on their counterclaim, the trial court determined that there was insufficient evidence before it to determine the amount of damages. Therefore, the trial court set the matter for a hearing on the assessment of damages. Following the hearing, on December 30, 2013, the trial court found that the SRA provided for liquidated damages of $500 per business day in the event of appellant's breach. Based on the number of days it found appellant was in breach, it awarded $109,454 in damages to appellees.

### B. Assignments of Error

{¶ 8} Appellant has timely appealed the judgment of the trial court, asserting two assignments of error for our review:[2]

---

[2] Notably, appellant's brief does not comply with App.R. 16(A)(3) in that it does not contain a statement of the assignments of error presented for review. Further, appellant's brief does not comply with App.R. 16(A)(2) requiring a table of authorities. However, the omission of a table of authorities is of no consequence considering that appellant's brief lacks even one citation to any case, statute, or rule.

4.

1. The finding by the trial Court that Terrie Jensen violated the non-compete provisions of the Sales Representative Agreement is not supported by, and in fact is contrary to the evidence presented.

2. The finding by the Trial Court that Terrie Jensen violated the non-compete provisions of the Sales Representative Agreement on 259 days is not supported by, and in fact is contrary to the evidence presented.

{¶ 9} Appellees have also appealed the trial court's judgment, asserting one assignment of error on cross-appeal:

1. The Lower Court erred by failing to assess damages for the full period of the Appellant's violation of the Covenant Not to Compete.

## II.  Analysis

{¶ 10} We will begin by addressing appellant's first assignment of error, in which she challenges the trial court's determination on summary judgment that she violated the non-compete provision of the SRA.  We will then address the trial court's finding of damages following the hearing, which is the subject of appellant's second assignment of error, and appellees' assignment of error on cross-appeal.

### A.  Breach of the Sales Representative Agreement

{¶ 11} Regarding appellant's first assignment of error, we initially note that we review summary judgment decisions de novo, applying the same standard as the trial court. *Lorain Natl. Bank v. Saratoga Apts.*, 61 Ohio App.3d 127, 129, 572 N.E.2d 198 (9th Dist.1989).  Applying Civ.R. 56(C), summary judgment is appropriate where

5.

(1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion, and viewing the evidence in the light most favorable to the non-moving party, that conclusion is adverse to the non-moving party. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978).

{¶ 12} In support of her first assignment of error, appellant argues that the trial court's decision finding that appellant violated the non-compete provision of the SRA is not supported by, and in fact is contrary to, the evidence.[3] Notably, appellant does not dispute that she formed Terem, or that she placed orders from appellees' customers through Terem. Rather, she argues that her actions were justified as a means of retaining customers that would have otherwise been lost because she was unable to process their order through appellees. Further, she contends that appellees had knowledge of this practice, and that she never intended to deny appellees their profits as evidenced by her offer to reach an agreement on an equitable division of the profits.

---

[3] In effect, appellant makes a manifest weight argument. This is an unusual argument in an appeal of a decision made on summary judgment, since, by rule, summary judgment contemplates that the trial court makes no findings because there is no question of fact raised by the evidence. Rather, the trial court determines judgment as a matter of law based on the undisputed facts. *See* Civ.R. 56(C). Nevertheless, we will address appellant's argument as she presents it, for it is her burden to demonstrate error on the part of the trial court, and it is improper for an appellate court to construct legal arguments to support a party's position. *Stanley Miller Constr. Co. v. Ohio School Facilities Comm.*, 192 Ohio App.3d 676, 2011-Ohio-909, 950 N.E.2d 218, ¶ 8 (10th Dist.).

6.

{¶ 13} Regardless of appellant's reasoning, however, the undisputed facts reveal that appellant breached the terms of the non-compete provision of the SRA, which states, in part, that appellant will not "Own, manage, control, operate or participate in the ownership, management or control, or engage as a sales representative or sales executive of any business which engages in any phase of the business of [appellees]." Here, appellant created and controlled a separate company that engaged in the same business as appellees, and the non-compete provision does not contain an exception for where the separate company is required to meet customers' needs. Indeed, appellant's justification reveals the fact that she viewed the customers as *her* customers, not appellees', and when appellees were purportedly unable to fill an order, she intervened. While appellant's actions may have been laudable from a customer service perspective, they ultimately resulted in her generating revenue for a different company than appellees. Therefore, we hold that summary judgment in favor of appellees on their counterclaim for breach of the SRA was appropriate.

{¶ 14} Accordingly, appellant's first assignment of error is not well-taken.

### B. Damages

{¶ 15} Appellant's second assignment of error and appellees' assignment of error on cross-appeal both concern the trial court's decision as to the appropriate amount of damages. Thus, we will address their assignments of error together.

{¶ 16} Appellant contends that the decision is not supported by, and is contrary to, the evidence. Similarly, appellees contend that the trial court erred in reaching its

7.

decision. Essentially, both parties are arguing that the trial court's decision is against the manifest weight of the evidence. When reviewing a decision in a civil case for being against the manifest weight of the evidence, we apply the same standard used in criminal cases. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 17-23. That is, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine "whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). In weighing the evidence, we must be mindful of the presumption in favor of the finder of fact:

> "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * * If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." *Eastley* at ¶ 21, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3.

{¶ 17} Here, following the hearing on damages, the trial court found that the breach began on March 12, 2008, when the first order was placed through Terem, and continued through March 7, 2009, when appellees failed to meet their obligation under

8.

the promissory note, thereby nullifying the SRA. The court determined that the breach constituted 259 business days, and awarded damages of $109,545.50 to appellees.

{¶ 18} Appellant argues that she should only be found to have breached the SRA on dates that she placed an order through Terem. Further, she argues that appellees became aware of the orders through Terem no later than July 17, 2008, but did not seek any injunctive relief. Thus, she concludes that July 17, 2008, is the last day that she could be found in breach, and when considering the number of days that Terem placed an order before that date, the trial court should have found that she was in breach for 36 business days, which would result in a liquidated damages award of $18,000.

{¶ 19} Appellees, on the other hand, contend that the trial court should have found that the breach began earlier, on July 26, 2007, when appellant formed Terem. Thus, they conclude that the breach lasted 423 business days, and the correct amount of damages is $202,703.95.

{¶ 20} Upon our review of the record, we do not find that the trial court's decision is against the manifest weight of the evidence. Although appellant formed Terem on July 26, 2007, she took no action with the company—i.e., did not apply for a tax identification number or vendor's license, or open a checking account—until she placed the first order on March 12, 2008. Thus, the trial court's finding that the breach began on March 12, 2008, and not on July 26, 2007, as urged by appellees, is not against the manifest weight of the evidence.

9.

{¶ 21} Thereafter, appellant continued to place orders through Terem. Testimony was elicited during the hearing that the act of placing the order was only part of the sales process, and that other activities, such as soliciting the order, following up after delivery, and billing, were also required. Thus, the trial court's implicit finding that appellant's conduct constituted an ongoing breach, as opposed to being isolated to the days actual orders were placed as argued by appellant, is not against the manifest weight of the evidence.

{¶ 22} Finally, although appellees became aware of Terem on July 17, 2008, the fact that they did not seek an injunction at that time does not foreclose them from recovering for appellant's continued breach, as there was testimony that appellees did not learn of the extent of appellant's conduct until March 2009 or later. Indeed, Belegrin testified that appellant assured her in response to the July 17, 2008 revelation that only three sales had been processed through Terem. Therefore, the trial court's finding that the breach continued until March 7, 2009, is not against the manifest weight of the evidence.

{¶ 23} Accordingly, finding their arguments to be without merit, appellant's second assignment of error and appellees' assignment of error on cross-appeal are not well-taken.[4]

---

[4] As a final matter, we recognize that appellant argues in the conclusion of her appellate brief and in her reply brief that the award of liquidated damages was inappropriate because the actual damages were readily ascertainable. However, under App.R. 12(A)(1)(b), appellate courts must "Determine the appeal on its merits on the

10.

## III. Conclusion

**{¶ 24}** For the foregoing reasons, the judgment of the Lucas County Court of Common Pleas is affirmed. Costs of this appeal are to be shared evenly by the parties pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.                           _____
                                                            JUDGE
Thomas J. Osowik, J.

                                            _____
Stephen A. Yarbrough, P.J.                                  JUDGE
CONCUR.

                                            _____
                                                            JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions. Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.sconet.state.oh.us/rod/newpdf/?source=6.

---

assignments of error set forth in the briefs under App.R. 16 * * *." "Thus, this court rules on assignments of error only, and will not address mere arguments." *Bonn v. Bonn*, 10th Dist. Franklin No. 12AP-1047, 2013-Ohio-2313, ¶ 9. Here, appellant's second assignment of error stated, "The finding by the Trial Court that Terrie Jensen violated the non-compete provisions of the Sales Representative Agreement on 259 days is not supported by, and in fact is contrary to the evidence presented." Thus, because appellant did not raise the issue of whether the liquidated damages constituted a penalty as part of her assignment of error, we will not address that issue. *See Firsdon v. Mid-American Natl. Bank*, 6th Dist. Wood No. WD-96-009, 1996 WL 714772, *6, fn. 1 (Dec. 13, 1996) (declining to review appellants' argument regarding a jury verdict because they did not assign it as error and did not support it by citation to those portions of the record reflecting the alleged error).