[Cite as *Watkins v. Allstate Vehicle & Property Ins. Co.*, 2020-Ohio-3397.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

James Watkins

    Appellant

v.

Allstate Vehicle and Property
Insurance Company, et al.

    Appellee

Court of Appeals No. L-19-1235

Trial Court No. CI0201801055

**<u>DECISION AND JUDGMENT</u>**

Decided: June 19, 2020

* * * * *

Anthony J. Richardson II, for appellant.

J. Patrick Schomaker and Christopher J. Mulvaney, for appellee.

* * * * *

**ZMUDA, P.J.**

## I. Introduction

{¶ 1} This matter is an accelerated appeal from two judgments of the Lucas County Court of Common Pleas, the first, granting defendant-appellee Allstate Vehicle and Property Insurance Company judgment on appellant, James Watkins' claim for bad faith, and the second, dismissing Watkins' remaining claim to enforce the insurance

policy, with prejudice, as a sanction for Watkins' response to written discovery requests. For the reasons that follow, we reverse.

## A. Facts and Procedural Background

{¶ 2} On February 7, 2017, Watkins' home at 2344 Robinwood Avenue burned, while Watkins, his fiancé, and his tenant/friend, Benito Canales, were in Las Vegas. The three learned of the fire from family, and booked a flight home. The city issued an emergency demolition order on February 8, and immediately demolished the structure. Thieves reportedly carried off cast iron and copper fixtures from the demolished property, prompting Watkins to file a police report. While Watkins later claimed there was a safe containing around $60,000 in cash, he did not include this information in the police report or otherwise notify authorities in order to recover the safe. Days later, the city hauled away the debris and filled in the basement to level the lot.

{¶ 3} Watkins submitted a claim for his loss, and Allstate sent Cheryl Miller-Rankin to the scene. Miller-Rankin worked with Watkins regarding his personal property claim, on behalf of Allstate. When she viewed the scene, she saw no personal property. Only a completely razed structure and bricks remained on the lot.

{¶ 4} Watkins had purchased coverage for both the dwelling (Coverage A) and his personal property (Coverage C), with the personal property coverage providing:

2.

**How We Pay For A Loss**

Under **Dwelling Protection – Coverage A * * *** and **Personal Property Protection – Coverage C,** payment for covered loss will be by one or more of the following methods:

a) Special Payment. At **our** option, **we** may make payment for a covered loss before **you** repair, rebuild or replace the damaged, destroyed or stolen property if:

1) the whole amount of loss for property covered under **Dwelling Protection –Coverage A * * *** without deduction for depreciation, is less than $2,500 and if the property is not excluded from the Building Structure Reimbursement provision;

or

2) the whole amount of loss for property covered under **Personal Property Protection – Coverage C,** without deduction for depreciation, is less than $2,500, **your** Policy Declarations shows that the Personal Property Reimbursement provision applies, and the property is not excluded from the Personal Property Reimbursement provision.

b) Actual Cash Value.  If **you** do not repair or replace the damaged, destroyed or stolen property, payment will be on an actual cash value basis. This means there may be a deduction or depreciation.  Payment will not exceed the Limit of Liability shown on the Policy Declarations for the

coverage that applies to the damaged, destroyed or stolen property, regardless of the number of items involved in the loss.

**You** may make claim for additional payment as described in paragraph c) and paragraph d) below if applicable, if **you** repair or replace the damaged, destroyed or stolen covered property within 180 days of the actual cash value payment.

&#42; &#42; &#42;

d) Personal Property Reimbursement.  Under **Personal Property Protection – Coverage C, we** will make additional payment to reimburse **you** for cost in excess of actual cash value if **you** repair, rebuild or replace damaged, destroyed or stolen covered personal property or wall-to-wall carpeting within 180 days of the actual cash value payment. Personal Property Reimbursement payment will not exceed the smallest of the following amounts:

1) the amount actually and necessarily spent to repair or replace the property with similar property of like kind and quality;

2) the cost of repair or restoration; or

3) the Limit of Liability shown on the Policy Declarations for **Personal Property Protection – Coverage C,** or any special limit of liability described in the policy, regardless of the number of items of personal property involved in the loss.

{¶ 5} Watkins did not purchase extended coverage for expensive items including jewelry, watches, and furs, or coverage for fair rental income, as noted on the declarations page. His personal property coverage, furthermore, expressly excluded claims for cash.[1] According to the policy, Watkins had coverage for "personal property owned or used by an insured person[.]"

{¶ 6} After initially meeting with Miller-Rankin, Watkins worked with a public adjuster. Cori Price, of Ohio Fire Claims, completed a "destroyed and out-of-sight" inventory with Watkins over the course of two days. Watkins provided a list of personal items, and based on Watkins' descriptions, Price provided the pricing for each item. Watkins provided the brand name, quantity, and age, and in some cases offered his opinion that his property was "high-end." Price entered the cost estimate for each item using her resources. Price then forwarded the inventory to the Ohio Fire Claims adjuster, Matt Slotka[2].

{¶ 7} Miller-Rankin prepared her own estimate after reviewing the Ohio Fire Claims inventory, and forwarded her information to Lynn Fields of Allstate. Watkins' claimed losses included expensive apparel, flat screen televisions, jewelry, collectibles,

---

[1] While Watkins does not argue coverage for his safe full of money, the policy clearly provided no coverage for certain types of property, including "money, bullion, bank notes, coins and other numismatic property[]" under the section titled Personal Property Protection – Coverage C: Property We Do Not Cover Under Coverage C.

[2] Allstate filed notice of the deposition of Matt Slotka on March 29, 2018, but filed no transcript of the deposition in the record, and did not cite to Slotka's testimony in seeking summary judgment.

and art. Watkins also claimed that he purchased most of the items within two or three years of the fire. At Allstate's request, Watkins appeared for an examination under oath that began on April 26, and continued to a second session on June 19, 2017.

{¶ 8} As part of the examination under oath, Watkins produced credit card statements and bills associated with his home, including utility bills and the mortgage statement. Watkins inherited the home upon his father's death in late 2001, and had lived there, off and on, since 1978. He received the home free of liens, but later mortgaged the property and used some of the loan proceeds to maintain the home. Watkins claimed he had also inherited a safe full of cash along with the home, about $175,000, and indicated he used that money to supplement his disability income of $490 a month, with only $35,000 of Watkins' funds remaining in the safe at the time of the fire. Watkins claimed the remainder of the cash in the safe belonged to Benito Canales.

{¶ 9} Many of the questions probed into Watkins' sources of income, either from his disability checks, his safe full of cash, or from his housemates. Watkins lived with his fiancé, Amy Kynard, who worked at Kroger.[3] Kynard took care of Watkins' budget and paid most of the bills. Watkins also cared for his tenant, Benito Canales, who suffered from poor health following a period of homelessness, an assault, and a more recent stroke. Canales received monthly income from a pension, and after cashing his monthly check, Canales gave Watkins the entire amount to control and manage. In

---

[3] While the case was pending in the trial court, Watkins and Kynard married.

6.

return, Watkins provided a home and personal care for Canales.[4] Allstate also questioned Watkins regarding a search warrant, executed at his Robinwood Avenue home a few years before the fire, which was based on suspicion of drug trafficking. The tenor of the examination under oath made it clear that Allstate was disputing the accuracy of Watkins' personal property inventory as inconsistent with Watkins' income from disability checks.

{¶ 10} On September 11, 2017, Lynn Fields of Allstate sent a letter to Watkins informing him there would be no coverage for any claim under the policy, pursuant to the policy's terms and conditions. Fields cited the policy's fraud provision, and stated:

> During the course of our investigation, Allstate determined you concealed or misrepresented material information regarding unscheduled personal property. Specifically, you concealed or misrepresented information in the following areas:
>
> (a) The value and nature of your personal property;
>
> (b) Your ownership and acquisition of specific items; and
>
> (c) Details as to age and quality of personal property,
>
> Prior to your Examination Under Oath on April 26, 2017 you submitted a contents inventory representing approximately 90% of the items you claimed had been purchased within the previous two years.

---

[4] Canales had his own renter's insurance coverage, and Canales received compensation from his own insurance company for his personal property loss.

7.

During you EUO, however, you testified the reported ages might not have been accurate. When provided the opportunity to more accurately report the age, value, and nature of your items, you failed to do so, and instead represented you could not recall the age of most items.

During your EUO you testified representatives of Ohio Fire Claims (public adjuster) incorrectly reported items on your contents inventory without your knowledge or approval. This testimony is in direct contrast to statements of these representatives who report 100% of the information on the contents inventory regarding the age and description of the contents was provided by you, personally.

Based on the totality of our investigation, reasonable justification exists pursuant to the policy of insurance and under Ohio law to deny this claim.

In denying Watkins' entire claim, Allstate provided no coverage for the dwelling, with no mention of fraud connected to Watkins' claim for the loss of his home. Watkins continued to pay the mortgage for the home.[5]

{¶ 11} On January 5, 2018, Watkins filed his complaint alleging breach of contract and bad faith against Allstate, and negligence against the City of Toledo Fire Department

---

[5] The premiums for Watkins' Allstate insurance policy were billed to the mortgagee, JPMorgan Chase Bank, N.A., as noted on the policy Declarations under "Important payment and coverage information." It is not clear from the record whether Watkins continues to pay premiums to Allstate through his mortgagee.

based on the destruction of his home. As to Allstate, Watkins alleged that he purchased insurance coverage for his real and personal property on Robinwood Avenue, he submitted a timely claim, and Allstate refused to pay the amounts stipulated in the contract of insurance. Watkins alleged Allstate's refusal to honor the contract and pay the claims amounted to bad faith.

{¶ 12} On February 2, 2018, Allstate filed its answer, admitting to a policy of insurance at the time of the fire, covering the real and personal property, and admitting Watkins suffered a loss of real and personal property in the fire. Allstate made no claim that Watkins had any blame for the fire and resulting damage, but disputed the amount claimed for the loss of Watkins' personal property.[6] Allstate indicated that "coverage was denied to [Watkins] pursuant to the terms and conditions of the policy of insurance." Allstate also denied bad faith, citing to Watkins' examination under oath as a basis to delay or to deny payment on the claim. Finally, Allstate asserted, as an affirmative defense, that Watkins failed to satisfy provisions under the policy, including the anti-fraud provision.

{¶ 13} Shortly after filing its answer, Allstate moved to sever Watkins' insurance-related claims from the negligence claim alleged against the fire department, which the trial court granted. Based on severance of claims, Allstate filed a first notice of removal to federal court on April 13, 2018.

---

[6] Amy Kynard was not a covered person under the policy.

9.

{¶ 14} On May 18, 2018, the federal court remanded Watkins' complaint against Allstate back to the trial court. Soon after, the city filed the transcript of Watkins' deposition, taken June 7, 2018, related to the negligence claim against the fire department. Counsel for Allstate attended that deposition, appearing by phone.

{¶ 15} On September 25, 2018, the trial court granted the fire department's summary judgment motion, finding the fire department was entitled to immunity under R.C. Chapter 2744. Watkins did not appeal this judgment, and with the fire department no longer a party, Allstate filed a second notice of removal to federal court. Within two months, the federal court remanded Watkins' claims back to the trial court.

{¶ 16} Allstate took the depositions of non-parties Benito Canales, Amy Kynard, and Jay-Ron Kynard, Amy's adult son. In February and March of 2019, the parties brought a discovery dispute to the trial court's attention. Watkins filed a motion for protective order, objecting to Allstate's attempt to schedule a "second deposition" of himself, characterizing the examination under oath as Allstate's first deposition. Allstate filed a motion to compel, seeking complete responses to written discovery, served on Watkins on January 22, 2019. While Watkins sought a protective order to prevent his deposition, he did not object to the written discovery requests, including information regarding Watkins' claimed damages for his real and personal property and his additional living expenses, documentation supporting his claims, copies of communications referencing the fire loss, and any photographs, recordings, or social media postings supporting his property claim.

10.

{¶ 17} The trial court held a phone conference on March 28, 2019, to address the discovery dispute and other matters. Following that phone conference, the trial court entered a scheduling order, and denied Allstate's motion to compel as moot without expressly ruling on Watkins' motion for protective order. The trial court scheduled a trial on November 19, 2019, and ordered deadlines for dispositive motions on July 1, 2019, and for discovery on October 18, 2019.

{¶ 18} With Watkins' motion for protective order apparently resolved, Allstate filed a notice of deposition for Watkins on April 2, 2019. Allstate requested Watkins produce documents for the deposition, specified as:

1. All documents that Plaintiff will use in this case to support all of his claims for compensatory damages.

2. All documents Plaintiff will use in this case to support his claim for compensatory damages relative to his dwelling claim.

3. All documents Plaintiff will sue in this case to support his claim for compensatory damages relative to his personal property claim.

4. All documents Plaintiff will use in this case to support his claim for compensatory damages relative to his Additional Living Expense claim.

5. All documents Plaintiff will use in this case to support his claim for any and all other compensatory damages of any nature not already identified above, if any.

11.

6. All documents Plaintiff will use in this case to support his claim for bad faith.

The deposition proceeded as scheduled, but Watkins did not produce any documents. Allstate continued to question Watkins regarding his ability to purchase all the items he claimed as destroyed in the fire.

{¶ 19} Sometime prior to June 27, 2019, Watkins' trial counsel served a summary judgment motion on Allstate, without filing the motion in his case. Allstate timely filed its motion for summary judgment as to the bad faith claim, accompanied by the transcripts of Watkins' examination under oath, transcripts of the depositions of Watkins, Amy Kynard, and Benito Canales, the affidavit of Cheryl Miller-Rankin, and a certified copy of the insurance policy issued to Watkins. Although Allstate cited to and included portions of the deposition of Cori Price, and the entire transcript is part of the record on appeal, there is no record of Allstate filing Price's deposition in the trial court proceedings.

{¶ 20} Watkins filed a brief in opposition to Allstate's summary judgment motion 28 days later. On July 16, 2019, Watkins belatedly filed his own summary judgment motion with the trial court, seeking judgment as to the contract claim, as well as a finding of bad faith. Allstate moved to strike Watkins' motion, as filed after the trial court's deadline.

{¶ 21} On July 25, 2019, Allstate filed a "second motion to compel complete discovery responses." This motion to compel sought complete responses to Allstate's

12.

second request for production of documents, served on May 20, 2019, and its second set of interrogatories and its third request for production of documents, served June 7, 2019. Allstate's discovery requests contained more specificity than the previous subpoena duces tecum served on Watkins in advance of his deposition, identifying the following:

1. The source of two deposits to Watkin's Huntington Bank Accounts, and all documents relating to these accounts.

2. The average monthly expenses for Watkins and Benito Canales related to his Canales' medical care and expenses, and all documents relating to these expenses.

3. A completed IRS Form 4506-T, to authorize the release of Watkins' tax returns from 2013 through 2016.

Much of the information related to Watkins' financial records, with Allstate acknowledging receipt of records from Watkins' "financial institutions" pursuant to a subpoena duces tecum served directly on those entities.

{¶ 22} Allstate objected to Watkins' trial counsel returning the authorization with counsel's signature, rather than the necessary signature of Watkins, rendering the form invalid.[7] Additionally, Allstate sought to hold Watkins responsible for the failure of Benito Canales, Watkins' tenant on the date of the fire, to respond to Allstate's subpoena.

---

[7] The instructions to Form 4506-T provides "Form 4506-T must be signed and dated by the taxpayer[.]" An authorized person may sign for corporations, partnerships, or individuals unable to sign. If another person, not the taxpayer, signs the form as an authorized person, the authorization document must be attached to the form.

13.

Finally, Allstate sought sanctions against Watkins for his repeated failure to comply with deadlines imposed by the trial court and the filing deadlines under the civil rules.

{¶ 23} Allstate attached a copy of the written discovery requests to its motion, referencing bank deposits in 2014 and 2015 in seeking account documents. Allstate also referenced Watkins' caregiving for Benito Canales, and requested documentation of monthly expenses for Canales' care, including medical expenses incurred by Canales.

{¶ 24} Allstate moved to strike Watkins' opposition brief to its summary judgment motion on August 1, 2019, as filed beyond the 14-day limit provided by local rule. Allstate argued that it was "readily apparent that [Watkins] has no interest in operating under the rules set forth by this Court to ensure the orderly and timely resolution of this matter." The trial court denied the motion, noting Watkins properly filed his opposition brief, as provided under the Civil Rules, which permitted 28 days to file a response to a motion for summary judgment.

{¶ 25} On August 9, 2019, the trial court ordered Watkins' motion for summary judgment stricken as untimely and filed without leave of court. On that same date, by separate entry, the trial court granted Allstate's motion for summary judgment as to the bad faith claim. In a summary, two-page opinion, the trial court recited the applicable standard and concluded the case was "fairly debatable," and denial of coverage was therefore justified as articulated in the controlling authority of *Tokles and Sons, Inc. v. Midwestern Indemnity Co.*, 65 Ohio St.3d 621, 630, 605 N.E.2d 936 (1992). Essentially, the trial court noted the applicable law and stated its conclusion with no analysis or

14.

consideration of the separate coverages provided under the Allstate policy, and the lack of any allegation of fraud or misrepresentation regarding the claim for the loss of Watkins' dwelling. The trial court's entry also does not reference any supporting evidentiary materials, submitted by Allstate, in granting the motion.

{¶ 26} In a third entry, filed August 9, 2019, the trial court granted Allstate's pending motion to compel. The trial court ordered Watkins to "fully and completely respond to all document requests contained within Allstate's Second Request for Production of Documents, its Second Interrogatories, and its Third Request for Production of Documents." Additionally, the trial court ordered Benito Canales to comply with the subpoena served upon him on June 7, 2019. The trial court included the following language in its entry:

> If such responses are not provided by the Court's deadline, the Court will award sanctions against Plaintiff, up to and including dismissal of all claims Plaintiff has presented in this case, with prejudice."

The trial court also awarded reasonable costs and attorney fees, pursuant to Civ.R. 37(A)(5)(a), but did not specify the amount of the award. According to the record, the clerk served a copy of the trial court's order by email on August 12, 2019, on all counsel of record. However, the record does not demonstrate service of this order on Canales, a non-party.

{¶ 27} On September 11, 2019, Allstate filed a motion seeking sanctions for Watkins' failure to comply with the trial court's order of August 9, 2019. The motion

15.

referenced exhibits, but Allstate failed to file those exhibits with the motion. The certificate of service indicated Allstate served a copy of its motion on counsel for Watkins by ordinary mail, with no service on Benito Canales.[8]

{¶ 28} In its motion, Allstate indicated Watkins' IRS release was invalid. Allstate further argued that Watkins provided other, written discovery responses that were nonresponsive, consisting of handwritten and unverified documents, and lacking substantive information, with the responses consisting of "I do not remember" or "I do not know." Allstate further claimed that documents Watkins did produce were miniaturized, and useless as admissible evidence. In sum, Allstate did not argue that Watkins failed to respond, but Allstate deemed the responses inadequate or improper. Allstate characterized the responses as a flagrant disregard of the trial court's August 9, 2019 order, and requested dismissal of all claims and an award of attorney fees.

{¶ 29} On September 27, 2019, Allstate filed the omitted exhibits to the motion for discovery sanctions, and served a copy on counsel for Watkins by ordinary mail, with no record of service on Benito Canales. These exhibits included an unredacted copy of Watkins' IRS Form 4506-T, as well as copies of written discovery requests, with Watkins' handwritten responses. As to the source of funds deposited in his bank, Watkins indicated he could not remember, but believed the 2015 deposit represented an

---

[8] Earlier in the proceedings, counsel for the parties served notice of motions and filings on each other vial email. Beginning in June 2019, however, Allstate began serving counsel for Watkins exclusively via ordinary, U.S. mail. The trial court continued to serve all attorneys of record via email.

16.

insurance payment from Nationwide, and he indicated he would agree to release the pertinent bank records to Allstate. As to Benito Canales' care, Watkins did not know the exact monthly expenses for his care, indicating he placed all of Canales' money into a common fund. Finally, regarding requested documents, Watkins indicated none in his possession, as all his papers burned in the house fire.

{¶ 30} On October 2, 2019, the trial court granted the motion for discovery sanctions, pursuant to Civ.R. 37 and 41(B). The trial court referenced the exhibits filed by Allstate just days prior to its ruling, and determined Watkins' failure to respond and produce the documents was sanctionable conduct. The trial court also faulted Watkins for violations of procedure, such as serving a motion for summary judgment without contemporaneous filing and subsequently filing a motion for summary judgment beyond the deadline, despite previously addressing the issue by striking Watkins' motion for summary judgment. Additionally, the trial court found fault in Watkins' failure to respond by written brief to Allstate's motions or Allstate's opposition briefs, actions permitted by the Civil Rules of Procedure, but not required. Finally, the trial court faulted Watkins for failing to file a brief in opposition to Allstate's first motion to compel, deemed moot by the trial court, and Allstate's second motion to compel, which provided the basis for the trial court's sanction.

{¶ 31} The trial court determined that the failure to produce documents, combined with a failure to adhere to the civil rules, demonstrated a "pattern of noncompliance and obfuscation" on the part of Watkins and his trial counsel. The trial court dismissed

17.

Watkins' remaining breach of contract claim against Allstate, as a sanction, and directed Allstate to submit an affidavit setting forth all reasonable costs, including attorney fees, incurred in filing the July 25, 2019 motion to compel and the September 11, 2019 motion for discovery sanctions, "as well as a proposed Order for payment of such costs by counsel for Plaintiff."

{¶ 32} Watkins' opposition brief to the motion for sanctions followed on October 3, and in opposing the request for sanctions, Watkins noted ongoing "harassment," including two removals to federal court and a lack of clarity regarding the information Allstate sought. Watkins also argued his inability to provide medical information regarding the care for Benito Canales, a non-party. Watkins provided emails exchanged between his counsel, Mr. Hillman, and former counsel for Allstate[9] to demonstrate the efforts made to comply with discovery requests, as well as issues raised regarding those requests, including the fact that Watkins' counsel did not represent Benito Canales.

{¶ 33} Allstate filed its affidavit of costs and attorney fees on October 10, 2019, with no indication of service on either Watkins or Watkins' trial counsel. Five days later, without hearing and without any indication of notice on Watkins or his counsel, the trial

---

[9] Allstate was represented by attorneys J. Patrick Schomaker and Andrew C. Scheper. On September 11, 2019, the same day Allstate filed its motion for sanctions, Allstate filed a notice of substitution of counsel, replacing Mr. Scheper with attorney Chris J. Mulvaney.

court entered an order for attorneys' fees. The trial court awarded Allstate a monetary sanction against Watkins, and not his trial counsel, in the full amount claimed by Allstate, $1,056, payable within 14 days of the entry. That same date, new counsel entered an appearance on behalf of Watkins.

{¶ 34} Watkins filed a timely notice of appeal of the trial court's judgments.[10] We remanded the matter to the trial court after Watkins filed a motion for relief from the dismissal entry, pursuant to Civ.R. 60(B). While on remand, the trial court entered an order, nunc pro tunc, substantively changing the award of attorney fees from a sanction against Watkins to a sanction against Watkins' original trial counsel, Mr. Hillman.[11] The trial court then denied the motion seeking relief from judgment, a judgment not appealed.

---

[10] Watkins' notice of appeal and docketing statement reference the dismissal and the award of attorney's fees. Watkins attached only the order awarding attorney's fees to the notice of appeal, and did not reference the summary judgment regarding his bad faith claim. Allstate, however, has not raised this issue, and addressed all assignments of error in its appellee brief. While the Local Rules of the Sixth District Court of Appeals require the appellant to attach "a copy of the judgment or order from which the appeal is taken," the failure to do so may result in, but does not mandate, dismissal. *See* 6th Dist.Loc.App.R. 3(A) ("Failure to attach the final judgment entry or order may be grounds for dismissal."). The purpose of a notice of appeal is to inform the parties and the court of appellant's intention to appeal a specified judgment. "[J]ustice is ultimately best served by an attitude of judicial tolerance toward minor errors * * * which pose no danger of prejudice to the opposing party or to the court's essential functions." *National Mut. Ins. Co. v. Papenhagen*, 30 Ohio St.3d 14, 16, 505 N.E.2d 980 (1987).

[11] The record indicates no notice to Mr. Hillman of this judgment.

## B. Assignments of Error

{¶ 35} Watkins now appeals the partial grant of summary judgment, as to the bad faith claim, and the dismissal with prejudice of his remaining claim. He asserts the following assignments of error.

> 1. The trial court committed reversible error with an unreasonable attitude when imposing the most severe sanction (dismissal) in addition to a less severe sanction ($1,056 for attorney fees) because the sanctions were too harsh and were based on alleged noncompliance with immaterial discovery requests, and appellee will suffer no prejudice yet unjustly benefit where the meritorious claims against it are not addressed due to the case ending on technicalities.

> 2. The trial court committed reversible error by granting summary judgment against appellant's bad faith claim where appellee offered no compensation for appellant's real and personal property claims, and where appellee's contract is at best ambiguous.

## II. Analysis

{¶ 36} Despite the contentious manner in which this case proceeded in the trial court, the parties agree on key facts in this case. There is no dispute Watkins owned a home on Robinwood Avenue, in Toledo, Ohio, and Allstate insured Watkins' home and personal possessions. This home was a three-story duplex in Toledo's historic Old West End, and was Watkins' family home from as early as 1978, with Watkins taking

ownership by inheritance about 15 years prior to the fire. It is undisputed that a fire destroyed Watkins' home on February 7, 2017, and Watkins submitted a timely insurance claim as a result of the fire.

{¶ 37} A dispute soon arose, however, after Allstate questioned Watkins' inventory of personal property destroyed in the fire. The dollar amount for Watkins' inventory totaled $199,292.95 in replacement cost, or $143,490.93 in actual cash value, with most items listed as relatively new, or acquired within three years from the date of the fire. Allstate found the inventory at odds with Watkins's financial reality. For years preceding the fire, Watkins was unemployed and his claimed income consisted of monthly disability checks. As a result, Allstate conducted an examination under oath, revealing other sources of financial support, and subsequently denied his entire claim based on the fraud provision of the policy. Allstate referenced the provision regarding misrepresentations pertaining to "coverage," noting inconsistencies in the person property inventory, *but never articulated any basis to deny the claim for dwelling coverage under the policy*.

{¶ 38} Allstate's questioning of Watkins, under oath and through written discovery, focused on the source of Watkins' funds used to purchase the personal property he listed on his inventory. In its second motion to compel and motion seeking sanctions, Allstate identified the following information as requested but not adequately produced: a valid IRS release form, documentation for the source of funds deposited in specific checking accounts, documentation regarding Watkins' care for Benito Canales,

21.

and more legible copies of checks deposited into Watkins' accounts. Watkins maintained that he produced all he had within his possession, and that Allstate otherwise obtained the information, either through his examination under oath and deposition, or directly from Watkins' financial institutions. Allstate acknowledged its subpoenas to Watkins' banks in seeking an order to compel, as it indicated it provided documents to Watkins "received from [his] financial institutions pursuant to Subpoena *Duces Tecum*" to aid Watkins in responding to interrogatories.

### A. Dismissal as Sanction

{¶ 39} The trial court dismissed Watkins' contract claim as a sanction, pursuant to Civ.R. 37 and 41(B). Watkins appeals that judgment, arguing the trial court's sanction of both attorney's fees and dismissal with prejudice was overly harsh, considering the contract claim alleged by Watkins in comparison to the discovery sought, characterized by Watkins as immaterial to his breach of contract claim. Watkins also argues that he filed no tax returns, relative to the IRS release requested by Allstate, and he produced a legible copy of checks as the only documents—responsive to the request—that he possessed. Furthermore, Watkins argues the trial court should not have sanctioned him for Benito Canales' failure to respond to a subpoena.

{¶ 40} While Civ.R. 37 provides for a range of sanctions including dismissal, Civ.R. 41(B) provides for dismissal with prejudice, a harsh remedy that requires prior notice. *Ohio Furniture v. Mindala*, 22 Ohio St.3d 99, 101, 488 N.E.2d 881 (1986). We review the trial court's dismissal for an abuse of discretion. *Quonset Hut, Inc. v. Ford*

22.

*Motor Co.*, 80 Ohio St.3d 46, 47, 684 N.E.2d 319 (1997). An abuse of discretion implies more than an error of law, and we will not reverse unless we find the trial court acted unreasonably, arbitrarily, or unconscionably in dismissing the case. *Id.* "In order to have an abuse of that choice, the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias." *Nakoff v. Fairview Gen. Hosp.*, 75 Ohio St.3d 254, 256, 662 N.E.2d 1 (1996).

{¶ 41} In reviewing the sanction imposed, we must ensure "the trial court examined the right things and did not act arbitrarily." *Priesman v. Young*, 6th Dist. Ottawa No. OT-95-055, 1996 WL 139513, *5 (Mar. 1, 1996), quoting *Russo v. Goodyear Tire & Rubber Co.*, 36 Ohio App.3d 175, 178-179, 521 N.E.2d 1116 (9th Dist.1987). We apply heightened scrutiny to a dismissal with prejudice, but will affirm the dismissal when "the conduct of a party is so negligent, irresponsible, contumacious or dilatory as to provide substantial grounds for a dismissal with prejudice for a failure to prosecute or obey a court order." *Quonset Hut* at 48, quoting *Tokles & Son, Inc. v. Midwestern Indemn. Co.*, 65 Ohio St.3d 621, 632, 605 N.E.2d 936 (1992), quoting *Schreiner v. Karson*, 52 Ohio App.2d 219, 223, 369 N.E.2d 800 (9th Dist.1977).

{¶ 42} Allstate requested dismissal, not based on the failure of Watkins to respond to its discovery requests, but based on the quality of Watkins' responses. Furthermore, Allstate advanced no claim based on its rights, relative to the defective IRS release, and had already questioned Watkins, under oath, on three occasions regarding the sources of

23.

his funds and his care for Benito Canales. Nonetheless, the trial court determined Watkins' conduct demonstrated a "complete disregard for the judicial system and the rights of Allstate."

{¶ 43} Based on the trial court's entry, granting Allstate's second motion to compel, Watkins was on notice that a failure to "completely respond to all document requests" would result in sanctions, "up to and including dismissal of all claims * * * with prejudice." Watkins provided miniaturized copies of two checks, and as to information sought regarding Canales' bills or the source of bank deposits in 2014 and 2015, Watkins indicated he either did not remember or had no knowledge, but also indicated he would grant Allstate access to his bank records to obtain documents directly from the bank. With the exception of the invalid IRS release, Watkins indicated he possessed no documents that were responsive to Allstate's written discovery requests, or pointed out that Allstate must direct the request to Benito Canales as the person able to convey the information. Watkins' response, in this regard, was consistent with Civ.R. 34(A), which requires a party to produce only documents that are within their "possession, custody, or control[.]"

{¶ 44} Based on the exhibits provided by Allstate to the trial court, Watkins produced documents, perhaps ineffectively, and otherwise indicated he had no other documents. Watkins' home burned and was immediately razed to the ground against his wishes, a completely plausible reason for having no other documents. The trial court never addressed Watkins' ability to produce documents prior to imposing its sanction,

24.

and never acknowledged Allstate's separate receipt of bank records through subpoena to the financial institutions. As to "the rights of Allstate," moreover, the trial court identified no prejudice to Allstate, based on the quality of Watkins' discovery response, sufficient to support a finding of substantial grounds for the harsh sanction of dismissal with prejudice.

{¶ 45} The remainder of the trial court's order required *Benito Canales* to "fully and completely comply with the Subpoena Duces Tecum served upon him on June 7, 2019[.]" There is no record of service of this order on Canales, however, and the trial court found *Watkins* failed to comply with the discovery order because Canales, a non-party, failed to respond to a subpoena. Allstate sought a motion to compel, however, regarding a non-party subpoena, pursuant to Civ.R. 37, which governs sanctions of a *party* failing to respond to a discovery request. Civ.R. 45 governs enforcement of a subpoena served on a non-party, with Civ.R. 45(E) authorizing sanctions against a non-party, including contempt of court and an order to pay reasonable expenses, including attorney's fees. The record is devoid of any indication that Allstate availed itself of this proper, procedural remedy against Benito Canales.

{¶ 46} In imposing the sanction of dismissal, the trial court failed to consider the responses tendered by Watkins, or whether the documentation—not produced—even existed. The trial court had already considered Watkins' sworn testimony in ruling on Allstate's summary judgment motion, however, and this testimony demonstrated the total destruction of Watkins' home while he was in Las Vegas. The trial court, furthermore,

25.

held Watkins responsible for the failure of Benito Canales to respond to a subpoena, despite Allstate's failure to comply with the Civil Rules governing the enforcement of non-party subpoenas.

{¶ 47} Upon review of the record, we find the trial court abused its discretion in dismissing the matter with prejudice. The trial court found no compliance, but the record belies this finding. Watkins provided responses to the written discovery requests. Allstate deemed those responses as unsatisfactory, complaining more about the form of Watkins' response than the substantive information sought—Watkins' financial information—a topic Allstate had explored with Watkins under oath on three occasions, and the subject of a subpoena served by Allstate on Watkins' bank. The trial court agreed with Allstate that Watkins had completely failed to comply with the motion to compel, without any consideration of whether the requested documents existed or were available to Watkins for production in a manner that would satisfy Allstate. Finally, the trial court held Watkins responsible for Benito Canales' failure to respond to a subpoena, despite Allstate's failure to enforce Canales' compliance as required under Civ.R. 45. Accordingly, the trial court erred in imposing the sanction of dismissal with prejudice, and Watkins' first assignment of error is well-taken.

{¶ 48} However, our determination, finding an abuse of discretion, does not entirely negate the trial court's sanction of attorney fees. While we reverse the trial court's judgment, dismissing the contract claim, we note that the trial court found that fees were appropriate in granting Allstate's second motion to compel. Watkins appealed

26.

the trial court's judgment, awarding attorney fees as a sanction, but did not appeal the award of attorney fees relative to the motion to compel. Therefore, fees incurred by Allstate in filing its motion to compel remain for the trial court to address. Pursuant to Civ.R. 37(A)(5), a "court shall, after giving an opportunity to be heard, require the party * * * whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Accordingly, upon remand, the trial court must determine the appropriate amount of fees related to Allstate's filing of its second motion to compel, only, and designate who shall pay such fees, after providing proper notice and an opportunity to be heard on the matter.

{¶ 49} Finally, considering the requirement of notice and opportunity to be heard, we note the trial court attempted to modify the monetary sanction imposed, using a nunc pro tunc order to assess Watkins' trial counsel, Mr. Hillman, rather than Watkins, for the attorney's fees awarded to Allstate. A nunc pro tunc entry is properly used to correct clerical errors, and not to make substantive changes to a judgment. *Pollock v. Hall*, 6th Dist. Lucas No. L-16-1096, 2017-Ohio-1218, ¶ 8, citing *State ex rel. Litty v. Leskovyanski*, 77 Ohio St.3d 97, 100, 671 N.E.2d 236 (1996). "Thus, the function of a nunc pro tunc entry is to have the record reflect what the court actually decided and not what the court might have decided or should have decided, or what the court intended to decide." *Id.,* citing *State ex rel. Fogle v. Steiner,* 74 Ohio St.3d 158, 164, 656 N.E.2d 1288 (1995).

27.

**{¶ 50}** Neither Allstate nor Watkins challenge the validity of the nunc pro tunc entry. However, it appears Mr. Hillman would be the person to raise a challenge, had the trial court provided notice of the change, obligating him to pay the sanction previously assessed. As we otherwise remand the matter for the trial court's consideration of a monetary sanction pursuant to Civ.R. 37(A)(5), as it relates solely to Allstate's second motion to compel, the trial court may address the matter of notice and opportunity to be heard as to Mr. Hillman, as necessary, in entering a new order.

### B. Bad Faith

**{¶ 51}** In his second assignment of error, Watkins argues the trial court erred in granting summary judgment for Allstate on his bad faith claim. We review a grant of summary judgment de novo, applying the same standard employed by the trial court.[12] *McNair v. State Farm Fire and Cas. Co.*, 6th Dist. Lucas No. L-13-1163, 2013-Ohio-5625, ¶ 21, citing *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996); *Lorain Natl. Bank v. Saratoga Apts.*, 61 Ohio App.3d 127, 129, 572 N.E.2d 198 (9th Dist.1989).

> The appositeness of rendering a summary judgment hinges upon the
> tripartite demonstration: (1) that there is no genuine issue as to any

---

[12] Allstate incorrectly argues that, because this matter is a civil suit, the applicable standard is manifest weight of the evidence, citing *Jensen v. AdChoice, Inc.*, 6th Dist. Lucas No. L-14-1014, 2014-Ohio-5590. In *Jensen*, we reviewed the trial court's summary judgment determination de novo, but reviewed the damages determination, after an evidentiary hearing, based on the manifest weight standard.

material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor.

*Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978). The party moving for summary judgment bears the burden of demonstrating the absence of issues of material fact. *Id.*

{¶ 52} Allstate argued Watkins misrepresented the value of his personal property on the inventory of destroyed property, and this misrepresentation provided a valid basis to deny Watkins' claim in its entirety under the policy's fraud provision. When Allstate provided Watkins an opportunity to corroborate his inventory, considering Watkins' lack of documented income, Allstate argued that Watkins failed to do so, and the photographs Watkins did produce omitted his alleged, "high-ticket" possessions.

{¶ 53} "[A]n insurer has the duty to act in good faith in the handling and payment of the claims of its insured." *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, 452 N.E.2d 1315 (1983), paragraph one of the syllabus. Where an insurer refuses to pay a claim without providing reasonable justification, the insurer fails to act in good faith. *McNair* at ¶ 24, citing *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552, 644 N.E.2d 397 (1994), paragraph one of the syllabus. Failure to act in good faith gives rise to a claim against the insurer. *Hoskins* at paragraph one of the syllabus.

29.

{¶ 54} In this case, Watkins alleged bad faith based on Allstate's unjustified refusal to pay for his insured loss of home and personal belongings, as provided under the Allstate policy. Allstate sought summary judgment, arguing the claim was "fairly debatable," with its refusal to pay the claim permitted based on the facts and the language of the insurance policy. Summary judgment is appropriate only "where the record is devoid of any evidence tending to show a lack of good faith" on the part of Allstate. *Reece v. Grange Guardian Ins. Co.*, 6th Dist. Lucas No. L-02-1290, 2004-Ohio-5668, ¶ 31, citing *Labate v. Natl. City Corp.*, 113 Ohio App.3d 182, 190, 680 N.E.2d 693 (9th Dist.1996).

{¶ 55} Allstate's legal authority, proffered in support of summary judgment, addressed dissimilar policy language, and generally involved circumstances of a suspicious occurrence, like arson or an intentional act. *See, e.g., Rainer v. Century Sur. Ins. Co.*, 4th Dist. No. 1565, 1990 WL 85207 (June 22, 1990) (policy included language voiding coverage based on willful conduct before or after a loss, and after bench trial, trial court found insured committed arson resulting in the loss); *Parker v. State Farm & Cas. Co.*, N.D. Ohio No. C87-2683, 1988 WL 1058394 (Nov. 4 1988) (at the close of evidence in a jury trial, court granted insurer a directed verdict, finding insured failed to provide proof of damages and lied about circumstances concerning the occurrence, including the insured's motive to commit the arson); *Nationwide Mut. Ins. Co. v. Skeens*, 2d Dist. Miami No. 07-CA-29, 2008-Ohio-1875 (in a case decided after trial, a jury

30.

determined the claimant committed fraud and materially misrepresented facts in making his claim, but found no intentional act causing the loss, an issue in dispute at trial).

{¶ 56} The policy language at issue in this case provides:

**Misrepresentation, Fraud or Concealment**

It is understood and agreed that the statements made by any named insured, or any application, in the application for insurance, during the application process, during the renewal process or on the Policy Declarations, are warranties and are incorporated into, and shall form part of this policy.

This entire policy is void from its inception if any warranty made by any named insured, or any applicant, is found to be false.

We may not provide coverage for any insured who has made fraudulent statements or engaged in fraudulent conduct in connection with an accident or loss for which coverage is sought under this policy.

{¶ 57} Thus, the Allstate policy permitted a denial of *coverage* if Watkins made fraudulent statements in connection with the accident or loss "*for which coverage is sought*[.]" Watkins purchased separate coverage for the dwelling, and Allstate never claimed that Watkins acted fraudulently in connection with the fire, considering Watkins, Amy Kynard, and Benito Canales were all in Las Vegas when the home burned. Allstate, furthermore, cited to no provision within the policy, collectively voiding separate types of coverage, based on the cited language.

31.

{¶ 58} Insurers typically consider each type of coverage, and the language of the policy, in handling claims. *See, e.g., Whitaker v. Grange Mut. Cas. Co.*, 2d Dist. Montgomery No. 20474, 2004-Ohio-5270, ¶ 17 (insurer could deny coverage for the dwelling for failure to maintain the home as the insured's residence, while still providing coverage for the insured's personal property, covered regardless of residency pursuant to the terms of the policy). In this case, the declarations page listed separate coverage and policy limits for Watkins' dwelling and his personal property. In moving for summary judgment, Allstate presented neither evidence nor argument regarding coverage for the dwelling.

{¶ 59} Allstate also never disputed Watkins' claim that he lost personal property in the fire. Instead, Allstate disputed the quantity, quality, and value of the personal property lost, arguing inconsistencies in Watkins' personal property claim that rose to the level of fraudulent conduct, voiding all coverage under the policy. The language of the policy, however, provides for a void *policy* only where fraud or misstatement occurred in the application process, a claim never advanced by Allstate. Instead, Allstate argued Watkins committed fraud or misrepresented facts relevant to his personal property coverage, with no claim regarding other coverages included within the entire policy.

{¶ 60} Proof of a fraudulent misstatement requires evidence of

(a) a representation or, where there is a duty to disclose, concealment of a

fact, (b) which is material to the transaction at hand, (c) made falsely, with

knowledge of its falsity, or with such utter disregard and recklessness as to

32.

whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.

*Coe v. Grange Mut. Cas. Co.*, 6th Dist. Erie No. E-06-057, 2007-Ohio-2823, ¶ 29, citing *Burr v. Bd. of Comm. of Stark County*, 23 Ohio St.3d 69, 491 N.E.2d 1101 (1986), paragraph two of the syllabus.

{¶ 61} Allstate argued that Watkins' inability to prove he owned all the property listed on the inventory, and his inconsistent testimony regarding that property, demonstrated fraud. Specifically, Allstate argued that it "uncovered evidence suggesting [Watkins] was intentionally concealing and misrepresenting information material to the claim through his statements and testimony, including material information as to the presence, age, quality, and condition of personal property."

{¶ 62} The evidence presented by Allstate, however, consisted mostly of Watkins' own testimony that fell well short of an admission of any intent to conceal or defraud. Allstate referenced Watkins' lack of income, receipts, or photographs of his claimed property, arguing Watkins failed to demonstrate he owned many of the items listed in the property inventory. Allstate, however, ignored testimony regarding other sources of funds, available to Watkins, and testimony that tended to corroborate his ownership of items, such as his many hats.

33.

{¶ 63} Allstate also cited to Watkins' amendments to the inventory, changing the definitive age of many items to "do not recall," and noting purchase of many items at estate sales, flea markets, or yard sales as an attempt at concealment or misrepresentation. Allstate argued Watkins' conduct was fraudulent because he "concealed basic information regarding items in his contents inventory by professing not to know basic details regarding his personal property." Watkins made the changes, however, based on Allstate's direction to Watkins to clarify the information within his inventory.

{¶ 64} At the close of the first day of Watkins' examination under oath, counsel for Allstate asked Watkins to review his inventory and provide a "better idea" regarding the "description, age, anything like that." Allstate's counsel encouraged Watkins to find pictures or video from family and friends depicting his possessions. Allstate's counsel told Watkins that he did not need a record of "every single item," just enough to provide "a sense of what [Watkins] described to [Allstate] as the inside of [Watkins'] house" or pictures showing Watkins "dressed up" or "showing [his] shoes" or his "nice hats and things like that."

{¶ 65} Allstate presented Watkins' testimony, and selectively quoted from Price's deposition.[13] Furthermore, while Allstate filed the affidavit of its representative, Miller-Rankin, to authenticate the inventory, Allstate did not file Miller-Rankin's deposition

---

[13] Despite no record of filing, the transcript is part of the record on appeal, and therefore considered in reviewing the appropriateness of summary judgment as to the bad faith claim.

34.

transcript until August 8, 2019, a day prior to the trial court's ruling on summary judgment regarding the bad faith claim. Finally, Allstate referenced no evidence of its own process, including evidence of reliance, in denying the claim. Significantly, although the denial letter identified Lynn Fields as the Allstate representative who ultimately denied Watkins' entire claim, Allstate cited to no affidavit or testimony of Lynn Fields, demonstrating facts providing a basis for the denial.

{¶ 66} In considering a motion for summary judgment, Allstate, as movant, bears "the burden to show the lack of any genuine issue of material fact." *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, 850 N.E.2d 47, ¶ 25, citing *Dresher v. Burt*, 75 Ohio St.3d, 280, 294, 662 N.E.2d 264 (1996). Therefore, Allstate must present evidence demonstrating an absence of genuine issues of fact regarding reasonable justification in denying Watkins' claim for dwelling coverage and personal property coverage. *See McNair*, 6th Dist. Lucas No. L-13-1163, 2013-Ohio-5625 at ¶ 24, citing *Zoppo*, 71 Ohio St.3d 552, at paragraph one of the syllabus

{¶ 67} In conducting our own review of the record, and construing that evidence most favorably for Watkins, we find the testimony of Watkins, Price and Miller-Rankin clearly demonstrated issues of fact regarding Allstate's claim of reasonable justification in denying Watkins' claim for dwelling coverage and personal property coverage. Price described her two-day process in compiling the inventory with Watkins, and testified that Watkins had difficulty remembering items toward the end of the first day, which she considered a normal response. She indicated, "it tends to be a little mentally exhausting

for the insured with how everything happened." Watkins, too, expressed his frustration with the task, indicating he was "tired and exhausted" when he did the inventory and "should have had better help" in "coordinating this thing."

{¶ 68} Additionally, both Price and Watkins addressed two of the discrepancies, highlighted by Allstate as evidence of fraud: the "two whole cows" and the iPad, listed on the inventory as property destroyed by the fire. Watkins indicated the "two whole cows" on the list, part of the meat that had been stored in a chest freezer, was the result of a joking comment, misunderstood by Price. Price, in turn, did not recall Watkins telling her he was joking, but she did "remember giggling." In addition to listing various cuts of meat, Price estimated the cost of each "cow" at $500, based on her "educated guess."

{¶ 69} Allstate also argued that Watkins fraudulently claimed he had purchased an iPad, but when pressed on obtaining a receipt from Apple, Watkins indicated it might not have been an iPad. Price listed an Apple iPad on the inventory, but also acknowledged that an iPad and a tablet look alike. After a total loss, as in Watkins' case, Price also acknowledged it could be difficult to get good information from the insured.[14]

{¶ 70} Miller-Rankin's testimony indicated she played no role in the rejection of Watkins' claim on behalf of Allstate. She testified that she had almost 40 years of

---

[14] Allstate also argued that Benito Canales claimed the loss of this same iPad, and received compensation for that loss under a separately purchased insurance policy, from a separate insurer. Because Canales testified that he owned no electronics, including an iPad, Allstate argued that this is evidence demonstrating Watkins committed a fraud by claiming ownership of the iPad. Even presuming Canales submitted a false insurance claim, there are no facts, of record, that would impute Canales' conduct to Watkins.

36.

experience as an adjuster, and dealt solely with Watkins' personal property claim. Miller-Rankin testified that she was not aware of any false statements made by Watkins regarding his inventory, and the policy provided coverage regardless of who purchased an item for the insured. According to Miller-Rankin, she typically supplied her estimate to the public adjuster, and "if there were any objections at that point we would discuss it." In Watkins' case, however, she testified that "his claim wasn't settled, the estimate wasn't finalized, so I provided my working copy of my estimate to Ms. Fields and that's - - that's where my job, so to speak, ended as far as the estimation is concerned." Allstate did not adjust the claim, but "Ms. Fields and whoever made the decision" denied it before it got to that point.

{¶ 71} Allstate took the examination under oath of Watkins and denied his entire claim after he claimed undocumented personal property loss totaling $199,292.95 in replacement cost, or $143,490.93 in actual cash value. Under the Allstate policy, Allstate provided coverage to Watkins with policy limits of $255,090 for personal property and $425,149 for the dwelling, but Allstate argues that Watkins' inconsistent testimony and lack of proof of ownership of personal property provided reasonable justification to deny coverage for both personal property and the dwelling.

{¶ 72} Allstate based its reasonable justification on the claim that Watkins committed fraud regarding the inventory, requiring evidence of Watkins' intent to mislead Allstate as well as Allstate's reliance on those misrepresentations. *Coe*, 6th Dist. Erie No. E-06-057, 2007-Ohio-2823 at ¶ 29, citing *Burr*, 23 Ohio St.3d 69, 491 N.E.2d

37.

1101, at paragraph two of the syllabus. In seeking summary judgment, Allstate presented no evidence regarding the investigation of Watkins' personal property claim, with the exception of the examination under oath, and no evidence regarding the actual denial of the claim for both the dwelling and the personal property. Allstate relied solely on selected testimony of Watkins, his housemates, and Price, the person from Ohio Fire Claims who prepared the inventory for the public adjuster. The only record testimony of an Allstate representative, moreover, consisted of testimony of Miller-Rankin, the person who prepared the Allstate estimate before passing the claim on to the decision-makers at Allstate. Miller-Rankin stated she had no reason to believe Watkins submitted a false claim.

{¶ 73} We previously found fraudulent conduct after an investigation revealed the insured submitted a false invoice as proof of the value of property. In *Reece v. Grange Guardian Ins. Co.*, 6th Dist. Lucas No. L-02-1290, 2004-Ohio-5668, ¶ 32, the evidence conclusively demonstrated that the insured "misrepresented, both orally and in writing, the cost and the condition of the tires and rims on his motor vehicle at the time it was stolen." The investigation included contacting the company that sold the tires and rims to the insured, and after confronting the insured with evidence of the actual amount paid, the insured admitted to submitting false information in seeking coverage for the loss. *Id.* at ¶ 11.

{¶ 74} Here, Allstate argued it presented evidence of a "fairly debatable" claim, based on fraudulent conduct. Construing Allstate's evidence in Watkins' favor, however,

38.

a reasonable trier of fact could reach the opposite conclusion, that Allstate denied all coverage for Watkins' personal property and dwelling based on an unsupported belief regarding fraud in Watkins' property inventory. "[A]n insurer lacks reasonable justification for denying a claim when its refusal to pay is predicated on an arbitrary or capricious belief that the insured is not entitled to coverage. (Citation omitted.) *Reece*, 2004-Ohio-5668, ¶ 30.

{¶ 75} Having thoroughly reviewed the evidence proffered by Allstate in support of its summary judgment motion as to bad faith, we find genuine issues of fact remain regarding reasonable justification to deny Watkins' claim for coverage for his personal property and dwelling. Accordingly, Allstate failed to meet its burden of demonstrating an absence of issues of fact regarding bad faith in handling Watkins' claims for coverage, and the trial court erred in entering summary judgment for Allstate regarding this claim. We find Watkins' second assignment of error well-taken.

## III. Conclusion

{¶ 76} Finding substantial justice has not been done, we hereby reverse the judgments of the Lucas County Court of Common Pleas, General Trial Division, granting summary judgment as to the second count of the complaint, and entering dismissal, as sanction, as to the first count of the complaint. Furthermore, we vacate the October 15, 2019 award of attorney fees, and remand the matter for a determination of appropriate

39.

fees, if any, related to Allstate's second motion to compel, only. Allstate is assessed the

costs of this appeal pursuant to App.R. 24.

Judgments reversed,
and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

_____
                                                JUDGE
Christine E. Mayle, J.

_____
Gene A. Zmuda, P.J.                              JUDGE
CONCUR.

_____
                                                JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions. Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.